(No. 47037.—

ILLINOIS BELL TELEPHONE COMPANY, Appellee, v. ROBERT H. ALLPHIN, Director of Revenue, *et al.*, Appellants.

*Opinion filed March 24, 1975.*

William J. Scott, Attorney General, of Chicago (Fred F. Herzog, First Assistant Attorney General, and Paul J. Bargiel and George H. Klumpner, Assistant Attorneys General, all of Chicago, of counsel), for appellants.

Donald H. Sharp, James R. Bryant, Jr., Edward Butts, and Thomas J. Berry, Jr., all of Chicago, for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

Illinois Bell Telephone Company (hereinafter Bell) filed in the circuit court of Cook County its complaint seeking a declaratory judgment that certain of its revenues were exempt from taxation under the provisions of "An Act in relation to a tax upon persons engaged in the business of transmitting messages," commonly referred to

as the Messages Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 467.1 *et seq.*) and the implementing rules and regulations of the Department of Revenue; also sought was an injunction restraining the Director of the Department of Revenue and the Attorney General from attempting to collect the tax. Subsequent amendments to the complaint and the responsive pleadings culminated in a four-count composite amended complaint, a composite answer thereto and a composite reply. Temporary injunction orders were entered as prayed, and defendants moved to vacate those orders and dismiss the action on the ground that plaintiff had failed to pursue its administrative remedies, a ground also asserted as an affirmative defense in defendants' answer. The trial court denied both the motion and the affirmative defense, finding that "no just reason to delay an appeal from this order" existed. Defendants then filed a notice of appeal to the appellate court, and we allowed their motion to transfer that appeal here. 50 Ill.2d R. 302(b).

Bell had filed its original complaint shortly after the Department of Revenue on July 31, 1973, issued a notice of tax liability in the amount of $45,946,086.23 covering an audit period from July, 1967, through November, 1970. A second notice of tax liability, covering an audit conducted in late 1973, was issued on June 21, 1974, in the amount of $60,255,626.56, corrected on June 26 to $63,102,349.08. As a result, amended composite pleadings were filed extending to these notices the allegations and responses relating to the original notice of tax liability. The trial court orders of August 17, 1973, June 27 and July 1, 1974, granting Bell's motions for temporary injunctions and enjoining the Director of Revenue from issuing a final assessment or holding any hearings pursuant to the notices, specifically tolled the 20-day period during which Bell could have filed a protest and requested an administrative hearing before the Department of Revenue, a final decision therein then being judicially reviewable

under the provisions of the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et seq.*). In each instance, the tolling order was entered within 20 days of the issuance of the applicable notice of tax liability.

The 20-day protest period is established by section 5 of the Messages Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 467.5), incorporating section 4 of the Retailers' Occupation Tax Act, which reads:

> "If [the taxpayer] shall within 20 days after such notice of tax liability file a protest to said notice of tax liability and request a hearing thereon, the Department shall give notice *** of the time and place fixed for such hearing and shall hold a hearing in conformity with the provisions of this Act, and pursuant thereto shall issue to [the taxpayer] a final assessment for the amount found to be due as a result of such hearing.
>
> If a protest to the notice of tax liability and a request for a hearing thereon is not filed within 20 days after such notice, such notice of tax liability shall become final without the necessity of a final assessment being issued and shall be deemed to be a final assessment." (Ill. Rev. Stat. 1971, ch. 120, par. 443.)

A paragraph at the bottom of the notices of tax liability used by the Department of Revenue informs the taxpayer of these provisions and the consequences of a failure to file a protest and request for hearing within the 20-day period.

Bell did not exhaust its administrative remedy available under the Messages Tax Act, which would include subsequent judicial review thereof under the Administrative Review Act. Rather, it asserts that its action is one brought in equity to enjoin the imposition of an illegal, unauthorized and invalid tax and hence proper under the doctrine established by this court in *Owens-Illinois Glass Co. v. McKibbin* (1943), 385 Ill. 245, in which it was stated:

> "From the foregoing resume the enjoining of the collection of illegal taxes constitutes an exception to the general rule that equity will not take jurisdiction of a cause when there is an

adequate remedy at law. It is established that where a tax is unauthorized by law, or where it is levied upon property exempt from taxation, equity will take jurisdiction and enjoin the collection of the tax. This constitutes an independent ground of equitable relief, and in such cases it is not necessary that special circumstances exist to authorize issuing an injunction. It is also the rule in such cases that where remedies are provided by statute they are cumulative, and are exclusive only where they have been first invoked by the taxpayer. And it is to be noted this exception to the general rule applies only to the illegal and unauthorized imposition of a tax, and not to irregularities in levying a lawful tax." (385 Ill. 245, 256.)

*Owens* was decided prior to the adoption of the Administrative Review Act in this State, and its most recent reaffirmance was in a factual context to which the provisions of the Administrative Review Act were not applicable. (See *Clarendon Associates v. Korzen* (1973), 56 Ill.2d 101.) It was narrowed somewhat by our recent decision in *Calderwood Corp. v. Mahin* (1974), 57 Ill.2d 216.

In *Calderwood,* the taxpayer had received a notice of tax liability, assessed in part for taxes, penalties and interest due under the Retailers' Occupation Tax Act, and filed its complaint in the circuit court to enjoin the collection of the portion attributable to its alleged liability under that act. No notice of protest was given the Department of Revenue, nor, although the complaint was filed within 20 days of the issuance of the notice of tax liability, was the court requested to toll the running of the 20-day protest period or enjoin the Department of Revenue from making a final assessment. The trial court did ultimately enjoin the Director of Revenue from collecting the amount owed under the Retailers' Occupa-

tion Tax Act because the sales in question were for resale and thus exempt from the provisions of the Act. We reversed and remanded with instructions to dismiss the complaint, holding that injunctive relief under *Owens* was unavailable because the 20-day period within which a notice of protest could have been filed had expired, the decision of the Department of Revenue had, under the statute, become final and plaintiff was thus obliged to seek relief under the Administrative Review Act:

> "The Administrative Review Act provides, *inter alia,* 'This Act shall apply to and govern every action to review judicially a final decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of this Act. In all such cases, any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not be employed ***.' (Ill. Rev. Stat. 1969, ch. 110, par. 265.) Section 12 of the Retailers' Occupation Tax Act provides that all proceedings for the judicial review of final administrative decisions of the Department shall be governed by the Administrative Review Act. Ill. Rev. Stat. 1969, ch. 120, par. 451.

> It is clear from our decisions that if a proceeding is not brought under the Administrative Review Act for judicial review of the Department's final assessment the assessment will be conclusive as to all questions affecting its merits. A defense as to the merits of the case must be raised through administrative review or it will be considered waived." (57 Ill.2d 216, 220.)

A final assessment existed in *Calderwood* because the 20-day protest period continued to run and upon expiration of the 20 days the "notice of tax liability [became] final without the necessity of a final assessment being

issued and [was] deemed to be a final assessment." (Ill. Rev. Stat. 1971, ch. 120, par. 443.) We held *Owens* and *Baumgardt v. Isaacs* (1963), 29 Ill.2d 29, did not apply because neither of those cases "involved a 'final administrative decision' of the Department of Revenue, the judicial review of which is governed by the Administrative Review Act." 57 Ill.2d 216, 221.

*Calderwood* is controlling here only if there exists a final administrative decision of the Department of Revenue. The distinguishing feature of this case is that, unlike *Calderwood,* the trial court specifically tolled the 20-day protest period and enjoined the Department of Revenue from issuing a final assessment. The 20-day period is essentially the administrative equivalent of a statute of limitations, which, as a general rule, continues to run unless tolling is authorized by statute. (*United States Fidelity and Guaranty Co. v. Dickason* (1917), 277 Ill. 77, 83.) When authorized, tolling is normally restricted to those situations in which a plaintiff has been prevented from pursuing his cause of action through no fault of his own. (See Ill. Rev. Stat. 1973, ch. 83, pars. 22, 23 and 24.) No statutory authority permits a court to toll the 20-day protest period involved in this action. Nor are the reasons justifying tolling present here since Bell was not prevented from pursuing its administrative remedy within the statutory period. The trial court erred in ordering the 20-day statute tolled. However, we note that at the time these erroneous orders were entered Bell still had time to comply with the 20-day statute, and its failure to do so resulted from its reliance on the court's orders. The Department of Revenue was a party to the proceedings and aware of Bell's reliance on the orders. This fact coupled with the fact that our opinion in *Calderwood* was not filed until May 20, 1974, some 10 months after the filing of Bell's original complaint, in our judgment justifies treating Bell ·as if it had filed a protest and request for hearing within 20 days. This constructive compliance with

the 20-day statute prevented the notices of tax liability from ripening into final assessments at the expiration of 20 days. As no hearing has yet been held and no formal final assessment issued, the Department of Revenue has not reached a final administrative decision which, under *Calderwood,* must be reviewed through the Administrative Review Act.

We turn now to a consideration of the *Owens* doctrine, which was the culmination of a series of decisions commencing with *Chicago, Burlington & Quincy Railroad Co. v. Frary* (1859), 22 Ill. 34. That doctrine, as earlier noted, substantially antedated the adoption in 1945 of the Administrative Review Act, section 2 of which provides:

> "This Act shall apply to and govern every action to review judicially a final decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of this Act. In all such cases, any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not be employed after the effective date hereof." (Ill. Rev. Stat. 1973, ch. 110, par. 265.)

The Act was passed by the legislature upon the recommendation of the Illinois Administrative Practice and Review Commission, whose research had revealed the existence of confusing, inconsistent, and inequitable methods of review. (See Illinois Administrative Practice and Review Commission Report to the Sixty-Fourth General Assembly of the State of Illinois 11-12 (1945) (hereinafter cited as Report).) Although review under the Act applies only to final administrative decisions, it seems clear that unlimited freedom to seek judicial review of the merits of the issue before an agency has rendered a final administrative decision would severely undermine the legislative purpose manifest in its enactment.

Even without statutory guidance, the doctrine of exhaustion has long been a basic principle of administra-

tive law—a party aggrieved by administrative action ordinarily cannot seek review in the courts without first pursuing all administrative remedies available to him. (*Myers v. Bethlehem Shipbuilding Corp.* (1938), 303 U.S. 41, 82 L. Ed. 638, 58 S. Ct. 26.) The rule is the counterpart of the procedural rule which, with certain exceptions, precludes appellate review prior to a final judgment in the trial court, and the reasons for its existence are numerous: (1) it allows full development of the facts before the agency; (2) it allows the agency an opportunity to utilize its expertise; and (3) the aggrieved party may succeed before the agency, rendering judicial review unnecessary. 2 F. Cooper, State Administrative Law 572-574 (1965); L. Jaffe, Judicial Control of Administrative Action 424-426 (1965); 3 K. Davis, Administrative Law Treatise secs. 20.01—20.10 (1958), and 1970 Supplement at 642-669.

All jurisdictions have recognized that the exhaustion doctrine, if strictly applied, could sometimes produce very harsh and inequitable results. While our courts have required comparatively strict compliance with the exhaustion rule, exceptions have been recognized where an ordinance or statute is attacked as unconstitutional in its entirety (*Bright v. City of Evanston* (1956), 10 Ill.2d 178), or where multiple remedies exist before the same zoning board and at least one has been exhausted (*Herman v. Village of Hillside* (1958), 15 Ill.2d 396), or where irreparable harm will result from further pursuit of administrative remedies. (*Peoples Gas Light and Coke Co. v. Slattery* (1939), 373 Ill. 31.) It is not our intention by this opinion to affect these existing exceptions.

These exceptions to the exhaustion doctrine have been fashioned in recognition of the time-honored rule that equitable relief will be available if the remedy at law is inadequate. In those situations covered by these exceptions, further recourse to the administrative process would not, or cannot, for a variety of reasons, provide adequate

relief. The *Owens* doctrine, however, is not only an exception to the exhaustion rule, but is also an "exception to the general rule that equity will not take jurisdiction of a cause when there is an adequate remedy at law." (385 Ill. 245, 256.) In short, a taxpayer may, under *Owens,* even in those cases to which the Administrative Review Act is applicable, seek judicial relief even though his administrative remedy might accomplish the same result, an anomaly that ought not, in our judgment, to persist.

Accordingly, we hold that as to those situations covered by the Administrative Review Act, the *Owens* exceptions are no longer applicable. We believe this ruling to be a logical extension of the exhaustion doctrine in furtherance of the legislative goals evidenced by the adoption of the Administrative Review Act.

In seeking equitable relief, Bell has relied on *Owens* and the subsequent decisions of this court reaffirming the *Owens* doctrine. Fundamental fairness therefore dictates, in our opinion, that the merits of this case be decided on the basis of *Owens. People v. Patton* (1974), 57 Ill.2d 43, and authorities there cited; *Great Northern Ry. Co. v. Sunburst Oil & Refining Co.* (1932), 287 U.S. 358, 77 L. Ed. 360, 53 S. Ct. 145; *Green v. Hale* (5th Cir. 1970), 433 F.2d 324.

Remaining for consideration, then, is whether, under *Owens,* Bell's complaint is sufficient to invoke the equitable jurisdiction of the trial court. Defendants' original motion to dismiss alleged, among other more specific reasons, a failure to state a cause of action; amended motions were filed, citing our *Calderwood* opinion and requesting an immediate ruling on the affirmative defense raised in its answer and the vacating of the temporary injunctions. The relief prayed for in the answer is to strike the complaint and dismiss the cause for want of equity, so defendants' motions are in substance motions to dismiss and will be considered to admit all facts well pleaded in Bell's complaint.

Plaintiff alleges in its complaint that the notices of tax liability include the imposition of an improper and illegal tax on eight items never before subject to the Messages Tax Act: (1) "revenues plaintiff receives for its participation in the transmission of interstate messages"; (2) "revenues received and retained by Independent Companies for their participation in the transmission of interstate and intrastate toll messages," pursuant to contracts with Bell; (3) "revenues plaintiff receives from the leasing of unenergized circuits"; (4) "an amount representing the difference between the tariff price of services plaintiff provides its employees and the amount actually paid by its employees for such service"; (5) "the amount of the tariff price of telephone services plaintiff provides municipalities without charge" in return for the use of streets; (6) "the amount plaintiff receives as reimbursement for its expenses in the movement of outside telephone equipment to make way for new construction"; (7) "the amount of the receipts from the 'additional charge' rate for additional listings in its regular telephone directory"; (8) "the amount of receipts plaintiff receives from charges made to its subscribers for not listing their number in its regular telephone directory."

Plaintiff further alleges that the taxation of these items by the Department of Revenue is illegal and unauthorized for one or more of the following reasons: (1) the tax is contrary to a specific section of the Messages Tax Act; (2) the tax is contrary to one of the rules and regulations of the Department of Revenue; (3) the revenues taxed were generated by activities outside the scope of the Messages Tax Act and the rules and regulations of the Department of Revenue; (4) the tax is contrary to a previous letter ruling of the Department of Revenue. The reasons applicable to each of the eight items are alleged specifically and in considerable detail in the complaint.

Defendants argue that the *Owens* doctrine is unavail-

able to Bell because the complaint does not allege the imposition of a tax "unauthorized by law" or a tax upon "property exempt from taxation," but rather alleges only irregularities in the imposition of a valid tax. Defendants theorize that an analysis of *Owens* and related cases reveals that the *Owens* doctrine is applicable only if the taxpayer is completely exempt from the particular tax in question or does not own the property in question. Since it is conceded that much of Bell's revenues are subject to the "messages tax" and that at least a part of the revenues taxed here belong to Bell, defendants argue that the case therefore involves only irregularities in the imposition of a lawful tax and the trial court thus lacked equitable jurisdiction under *Owens* and should have dismissed the action.

We cannot agree with such an analysis, which is based only upon the factual circumstances in *Owens* and other cases and not upon any direct interpretation by this court as to the meaning of a tax "unauthorized by law" or a tax upon "property exempt from taxation." We have never held that an occupation tax, such as the retailers' occupation tax or the messages tax, cannot be "unauthorized by law" when imposed on revenues outside the scope of the particular tax statute simply because the taxpayer concedes that other of its revenues are subject to the tax. Nor have we ever held that "property exempt from taxation" means only property which is not owned by the taxpayer. Such interpretations are inconsistent with the language employed by this court in *Owens*.

The Messages Tax Act authorizes the Department of Revenue to impose a tax "upon persons engaged in the business of transmitting messages in this State at the rate of 5% of the gross receipts from such business." (Ill. Rev. Stat. 1971, ch. 120, par. 467.2.) "Gross receipts" are the "consideration received for the transmission of messages and for all services rendered in connection therewith." (Ill. Rev. Stat. 1971, ch. 120, par. 467.1.) Clearly then, even if

a taxpayer has some revenue from the transmission of messages, the tax cannot be imposed on other revenues which have been received in consideration for business other than the transmission of messages or related services. A "messages tax" on such revenues would be "unauthorized by law" within the meaning of *Owens*. Additionally, the Messages Tax Act and the rules and regulations of the Department of Revenue may exempt from taxation other revenues which are in fact generated by the transmission of messages or related services. Those revenues remain "property exempt from taxation" within the meaning of *Owens*.

In its complaint, Bell specifically alleges that the Department of Revenue imposed a "messages tax" on eight sources of revenue which were either exempted from taxation by the Act and the rules and regulations or were generated by business other than the transmission of messages or related services, and hence beyond the scope of the Act and rules and regulations. If the allegations are true, as we assume for purposes of this appeal, the Department of Revenue has assessed taxes which are "unauthorized by law" or has levied an otherwise lawful tax on "property exempt from taxation"; the complaint therefore states a good cause of action under the *Owens* doctrine.

The trial court correctly refused to dismiss the complaint, and the judgment of the circuit court of Cook County is affirmed and the cause remanded for further proceedings consistent with this opinion.

*Affirmed and remanded,*
*with directions.*