THE PEOPLE *ex rel.* ELEANOR P. PETERSEN, Chairperson, Illinois Fair Employment Practices Commission, Petitioner-Appellant, *v.* TURNER COMPANY, Respondent-Appellee.

Second District (1st Division)   No. 75-37

Opinion filed April 15, 1976.

William J. Scott, Attorney General, of Chicago (Jerome Webb, Assistant Attorney General, of counsel), for appellant.

John Countryman, of Castle, Burns, O'Mally & Countryman, of De Kalb, and William Dickinson, of Stamford, Connecticut, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Petitioner, the chairperson of the Illinois Fair Employment Practices Commission (hereinafter FEPC), appeals from the order of the trial court which denied its motion to strike affirmative defenses of the respondent, Turner Company (hereinafter Turner), and from the order which thereafter denied petitioner's motion to reconsider and vacate that order. We granted leave to appeal pursuant to Supreme Court Rule 308 (Ill. Rev. Stat. 1973, ch. 110A, par. 308).

The trial court found that (1) Turner, although it was the losing party in a proceeding before the Fair Employment Practices Commission and had not pursued judicial review pursuant to section 10 of the Fair Employment Practices Act (Ill. Rev. Stat. 1973, ch. 48, par. 860) and sections 2, 11, and 12 of the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, pars. 265, 274, 275), could plead affirmative defenses in reply to an enforcement proceeding brought under section 11 (par. 861) of the Fair Employment Practices Act;[1] and (2) the affirmative defenses disclosed by the pleadings were proper.

The FEPC contends that judicial review of the Commission's decisions is provided for under par. 860 and constitutes the sole method of challenging the substance of any final order and decision of the FEPC. Therefore, the petitioner argues that the trial court erred in refusing to strike respondent's defenses which allegedly involve only challenges to the merits of the agency's decision. Turner claims that par. 861 of the Act delineates an alternative method of obtaining judicial review.

In October, 1972, Betty Elliott and Kathy Bennett, employees of Turner, filed charges with the FEPC against the employer, alleging that its medical benefits program was sexually discriminatory. The FEPC on December 12, 1973, issued a final order and decision which found discrimination and ordered respondent to take certain steps regarding its medical benefits program to avoid sexual discrimination. Turner intentionally did not comply and so informed the FEPC. Thereafter, on February 8, 1974, the FEPC filed a petition for judicial enforcement pursuant to par. 861 of the FEPA. Turner Company filed an answer which set forth four affirmative defenses which may be summarized as follows: (1) that in the enforcement proceedings it is entitled to contest the validity of the FEPC's order even though it knowingly allowed the time period for filing a complaint under the ARA to lapse; (2) that the Commission's conclusion that pregnancy is a temporary physical disability which must be treated like any other such disability is without evidentiary support and without foundation in law; (3) that the Commission's conclusion that

---

[1] For simplicity references to the subdivisions of the Administrative Review Act (ARA) and the Fair Employment Practices Act (FEPA) will be made to the paragraph numbers in Illinois Revised Statutes, 1973, throughout this opinion.

respondent's failure to treat pregnancy as any other temporary physical disability under its accident and sickness insurance policy constitutes unlawful discrimination is erroneous as a matter of law; and (4) that the Commission's guidelines which require employers to treat pregnancy like any other temporary disability for the purpose of paying insurance benefits, by creating an unwarranted irrebuttable presumption that pregnancy of itself is a temporary disability, deprives respondent of due process of law, constitutes an unwarranted intrusion upon the employer-employee relationship and is beyond the Commission's legal authority.

The court refused to strike these defenses on petitioner's motion and certified the questions of law to this court.

We must first resolve the question of whether the proceedings under the Administrative Review Act constitute the sole method of challenging the substance of a final order and decision of the FEPC, as the petitioner contends; or whether the legislature has provided an alternative means of obtaining judicial review of the legal findings and conclusions of the Commission by providing for enforcement proceedings to be brought in the circuit court under par. 861, as Turner contends. Resolution of this issue, which is acknowledged to be one of first impression in Illinois, involves essentially the reconciliation of two sections of the FEPA, pars. 860 and 861.

Par. 860 provides:

> "*Review under Administrative Review Act.* Any complainant or respondent may apply for and obtain judicial review of an order of the Commission entered under this Act in accordance with the provisions of the 'Administrative Review Act,' approved May 8, 1945, as heretofore or hereafter amended; and the Commission in proceedings under this Section may obtain an order of Court for the enforcement of its order."

Par. 861 provides:

> "*Judicial enforcement.* Whenever the Commission concludes that any person has violated a valid order of the Commission issued pursuant to Sections 8, 8.01 and 8.02 of this Act, and the violation and its effects are not promptly corrected, the Commission shall commence an action in the name of the People of the State of Illinois by petition, alleging the violation, attaching a copy of the order of the Commission and praying for the issuance of an order directing such person, his or her or its officers, agents, servants, successors and assigns to comply with the order of the Commission. Upon the commencement of such action the Court shall have jurisdiction of the proceedings and power to grant or refuse, in whole or in part, the relief sought or such other remedy as the Court may deem proper, provided that the Court may stay

an order of the Commission in accordance with paragraph (1)(a), Section 12 of the 'Administrative Review Act,' pending disposition of the proceedings. The Court may punish for any violation of its order as in case of civil contempt. * * * "

The FEPC asserts that the provisions of the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, pars. 264-279) are adopted by express reference in par. 860 of the Fair Employment Practices Act. Therefore, the agency contends, the use of other methods of obtaining judicial review of the agency's decisions is precluded by par. 265 of the Administrative Review Act, which provides that when the Administrative Review Act is applicable, "any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not be employed * * *." In support of its contention that par. 861 of the Fair Employment Practices Act was not intended to provide an alternate method of review, the agency notes that the stated purpose of the FEPA (Ill. Rev. Stat. 1973, ch. 48, par. 851) is to protect equal employment opportunity and that the adoption of the ARA as the method of judicial review evidences a legislative intent to encourage prompt resolution of employment practice disputes since the ARA requires action to be filed within 35 days of the disputed order. (See Ill. Rev. Stat. 1973, ch. 110, par. 267.) The agency also argues that its construction of pars. 860 and 861 supports the stated legislative policy of protecting the interests of both employers and employees when an unfair employment practice is charged (see Ill. Rev. Stat. 1973, ch. 48, par. 851) because the ARA places the burden of review on the losing party before the administrative agency. If par. 861 of the FEPA is interpreted to provide an alternative method of review when the agency moves in the circuit court to enforce its order, the FEPC contends that this legislative scheme would thereby be thwarted. It argues that upholding the alternate method of challenging the agency orders would result in encouraging a losing respondent not to file for administrative review since no rights would be lost through inaction. The respondent could therefore refuse to comply and then wait to defend when the agency reached the enforcement stage. It concludes that the powers given to the circuit court in an enforcement proceeding brought under par. 861 were intended to permit the court to respond to proper jurisdictional challenges, to prevent proceedings under par. 860 and par. 861 from going forward simultaneously before different judges in the same court, and to make minor nonsubstantive changes in the agency's orders when necessary.

Turner argues that the legislature may provide alternate methods of review of administrative agencies' decisions. It notes that the legislature in par. 860 provided only that the complainant or respondent "may" apply

for judicial review under the Administrative Review Act. It contrasts this language with "shall apply" language used in other acts and argues that this distinguishes the case before us from *People ex rel. Chicago & North Western Ry. Co. v. Hulman*, 31 Ill. 2d 166 (1964), and *Goldfarb v. White*, 54 Ill. App. 2d 483 (1964). It also points out the absence of language similar to that used in the Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1041), which also contains both judicial review and general court enforcement provisions but specifically states that no challenge to the validity of a board order can be made in any enforcement proceedings as to any issue that could have been raised in a timely review under the Administrative Review Act.

Turner also contends that the language of par. 861 clearly indicates the right to raise substantive defenses to the enforcement proceedings. It argues that the legislature would not have given the circuit court in enforcement proceedings "* * * power to grant or refuse, in whole or in part, the relief sought or such other remedy as the Court may deem proper * * *" if it did not intend to grant the respondent the right to raise substantive matters relative to a Commission order, which the court could then consider in determining whether enforcement of such orders should be granted, denied or modified. If the defendant in an enforcement proceeding may not, at the very least, challenge the propriety of the Commission's legal conclusions, the Company asserts, the court would have no basis upon which to exercise the powers granted. It notes that the reference to a "valid order" of the Commission in par. 861 is further evidence of a right to test the validity of the order and concludes that if par. 861 is not construed to permit defenses to the merits of an order, much of the language in that paragraph is meaningless.

In addition, the company points out that actions may be even more prompt under par. 861 than under the Administrative Review Act since the Commission is not precluded from immediate action to enforce its orders. Therefore, it asserts that winning complainants are fully protected by the trial court's interpretation since the interest of the Commission and the interest of parties complaining of discrimination are virtually identical and may be promptly addressed in the enforcement proceedings. Moreover, it notes nothing prevents the complainants from intervening in the enforcement proceedings.

■■ An examination of the structure of the Fair Employment Practices Act; the purposes and provisions of the Administrative Review Act; and disposition of other cases in which a litigant has ignored a statutory method of obtaining judicial review of an administrative decision clearly available to him, choosing instead to utilize a method which is only arguably available, mandates our conclusion that the trial court erred in

holding that the Turner Company could raise legal defenses or defenses to the merits of a Commission decision in an action for enforcement brought under par. 861 of the FEPA.

Section 2 of the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 265) provides, as material here:

"This Act shall apply to and govern every action to review judicially a final decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of this Act. In all such cases, any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not be employed after the effective date hereof."

■■ When the legislation creating an administrative agency in Illinois expressly and affirmatively adopts the ARA as the mode of judicial review, Illinois courts have consistently held that the remedy under the Administrative Review Act is exclusive and that alternate methods of direct review or collateral attack are not permitted. See, *e.g., Chicago Welfare Rights Organization v. Weaver*, 56 Ill. 2d 33, 38-39 (1973); *People ex rel. Chicago & North Western Ry. Co. v. Hulman*, 31 Ill. 2d 166, 169 (1964); *People ex rel. Stone v. Wilson*, 111 Ill. App. 2d 101 (1969).

This is not to say, however, that the legislature may not provide alternate and even cumulative methods of judicial review of the decisions of administrative agencies. The phrase "judicial review" when used in the context of administrative law may embrace various proceedings in which a court is asked to review an agency's decision, such as an affirmative collateral attack or defensive pleadings in an enforcement proceeding (see 2 Am. Jur. 2d *Administrative Law* 493, 494, 515 and 554).

A recognition that more than one method of obtaining judicial review of an administrative agency's decision may be provided in a given statute (see, *e.g., People ex rel. Hillison v. Chicago, Burlington & Quincy R.R. Co.*, 22 Ill. 2d 88 (1961), and *People ex rel. Kohorst v. Gulf, Mobile & Ohio R.R. Co.*, 22 Ill. 2d 104 (1961)) and that judicial review is sometimes obtained by raising defenses in an enforcement proceedings, however, does not resolve the question presented: Whether the legislature in enacting par. 860 of the FEPA intended that the ARA be the exclusive method of judicial review or whether it contemplated an additional form of judicial review of the administrative agency's decision and order by raising defenses on the merits of the controversy in an enforcement proceeding brought under par. 861 of the Act.

We note that the ARA was designed to provide a single uniform method by which decisions of the administrative agencies, whose creating statutes adopted the provisions of the ARA by express reference, could be judicially reviewed. (*Moline Tool Co. v. Department of*

*Revenue*, 410 Ill. 35, 37-38 (1951); see also *People ex rel. Goldfarb v. White*, 54 Ill. App. 2d 483, 491 (1964).) One purpose of the ARA is to make available to persons affected by administrative decisions a judicial review consonant with due process standards without unduly restricting the exercise of administrative judgment and discretion considered essential to the effective administrative process. (*People ex rel. Fike v. Slaughter*, 31 Ill. App. 2d 175, 178 (1961); *People ex rel. Stone v. Wilson*, 111 Ill. App. 2d 101, 105 (1969).) There is, of course, no requirement that more than one method of judicial review be provided and any right to review a final decision of an administrative agency is limited and circumscribed by the statutes which authorize such review. *Board of Education v. Gates*, 22 Ill. App. 3d 16, 19 (1974); *Thompson v. County Board of School Trustees*, 130 Ill. App. 2d 660, 662 (1970), *cert. denied*, 404 U.S. 883, 30 L. Ed. 2d 164, 92 S. Ct. 213; *Stirniman v. County Board of School Trustees*, 26 Ill. App. 2d 245, 249 (1960).

■■ Paragraph 860 of the Fair Employment Practices Act, which is headed "Review under Administrative Review Act," clearly authorizes judicial review of a Commission decision where a party makes application for such a review in accordance with the ARA. Turner has sought to attach significance to the fact that par. 860 of the FEPA provides that a "complainant or respondent *may* apply for and obtain judicial review of an order of the Commission" (emphasis added) in accordance with the ARA and has sought to distinguish a number of the cases cited by the petitioner on the theory that the judicial review provisions of the relevant statute made the application of the ARA expressly mandatory whereas par. 860 of the FEPA does not. We do not find that argument persuasive. Par. 265 of the ARA provides that it "shall apply to and govern every action" where the statute creating the agency "by express reference adopts" the ARA. The fact that par. 860 of the FEPA speaks in terms of "may apply" does not affect the applicability of the ARA since par. 860 has expressly adopted that Act for judicial review. (*Cf. People ex rel. Phillips v. Board of Education*, 83 Ill. App. 2d 154 (1967).) Par. 860 of the FEPA speaks in terms of who can apply to seek review, *i.e.*, who may be complainant or respondent in accordance with the provisions of the Administrative Review Act. (See *Board of Education v. Gates*, 22 Ill. App. 3d 16 (1974).) We agree with petitioner that the use of "shall" in the particular sentence structure would have been ill-advised since it would give the impression of mandating judicial review even if the losing party were content to accept and comply with the Commission's order. *Cf. People ex rel. Oak Supply & Furniture Co. v. Department of Revenue*, 62 Ill. 2d 210, 214 (1976).

It appears that the legislature has used many different ways of incorporating the provisions of the ARA "by express reference" (see

*Department of Registration & Education v. Aman*, 53 Ill. 2d 522 (1973)) and we must conclude that the reference in the FEPA describes an exclusive mode of review in the absence of language clearly mandating the opposite conclusion.

■■ We also cannot agree with respondent's contention that the powers given to the circuit court in enforcement proceedings under par. 861 provide such a clear mandate to reach the opposite conclusion. Under par. 860 of the FEPA, the Commission is given the authority to interpose a plea for an order of court directing compliance with the agency's order in proceedings for judicial review brought under the ARA. We believe the authority given to the Commission under par. 860 evinces not only a legislative intent to permit the Commission to enlist the aid of the court in the enforcement of its orders but also, in situations in which the validity of the agency's order is contested, an intent to permit complete resolution of the dispute in one court proceeding. However, without par. 861, the Commission might not be able to enlist court aid for the enforcement of its orders in a situation such as the one presented by this case, *i.e.*, a situation where the respondent did not seek to test the validity of the Commission's orders by filing an action under par. 860 but simply refused to comply. We believe the legislature, by enacting par. 861 and heading it, "Judicial enforcement," intended to provide for a method of obtaining enforcement of the Commission's orders in a case where a losing respondent neither sought judicial review in accordance with the ARA nor complied with the FEPC's order.

■■ The powers given to the court under par. 861 are consistent with this construction. They are sufficient to permit the court to enforce the order effectively, to modify it if it has become out of date due to noncompliance (see, *e.g.*, *State Water Com. v. City of Norwich*, 141 Conn. 442, 107 A. 2d 270 (1954)), to stay an order of the Commission pending consolidation with a proceeding for judicial review filed pursuant to par. 860, or to refuse enforcement in whole or in part where the agency has proceeded without jurisdiction or exceeded its jurisdiction.[2] The reference to a "valid order" of the Commission in par. 861 is also consistent with this construction. It precludes the Commission from obtaining enforcement or orders which are invalid due to jurisdictional defects and permits a respondent to raise proper jurisdictional defenses.

While we have not found any Illinois authority directly in point, we are fortified in the conclusion we have reached by what we have noted as a

---

[2] It is significant, we believe, that the legislature in enacting par. 861 did not give the court all the powers of a court in a judicial review brought under the ARA. Had it intended to do so, it could have incorporated all of section 12 of the ARA. Instead, only paragraph (1)(a) of section 12 is incorporated.

marked reluctance in the Illinois cases to afford relief to litigants who fail to exhaust the statutory methods of administrative judicial review and who choose to wait until enforcement proceedings to present a defense on the merits. This may be explained by the axiom that "[i]t is a fundamental rule of law that one may not be permitted to do indirectly that which he cannot do directly" (*People v. Oakridge Cemetery Corp.*, 328 Ill. 53, 55 (1927)). Stated in another way, we detect a strong undercurrent in the Illinois cases that one method of obtaining judicial review from an administrative decision is sufficient and that another means which is arguably present in the statutory scheme will not be recognized unless clearly intended to be an alternate or cumulative means of reaching the court. (See *Illinois Bell Telephone Co. v. Allphin*, 60 Ill. 2d 350, 357-59 (1975).) While the authorities are not specifically in point, the tendency we have described is illustrated in a long line of Illinois tax cases which have held that a party who has failed to utilize affirmative methods of challenging an assessment or statement of deficiency through administrative procedures and judicial review provided in the statute may not challenge such determination by raising legal defenses in enforcement proceedings. (See, *e.g., Department of Finance v. Gold*, 369 Ill. 497 (1938); *Department of Finance v. Goldberg*, 370 Ill. 578 (1939); *Department of Finance v. Schmidt*, 374 Ill. 351 (1940); *Department of Finance v. Huizenga*, 379 Ill. 357 (1942); *Department of Finance v. Kilbane*, 381 Ill. 117 (1942); *Department of Finance v. Sinclair*, 382 Ill. 118 (1943).) While the cited cases were decided prior to the application of the Administrative Review Act, the rule against legal defenses to enforcement proceedings continued to obtain following the amendment of the Retailers' Occupation Tax Act to provide for review pursuant to the ARA instead of by writ of certiorari. See *Moline Tool Co. v. Department of Revenue*, 410 Ill. 35, 38 (1951); *Department of Revenue v. Downstate Coal Co.*, 11 Ill. 2d 317 (1957); *Department of Revenue v. Steacy*, 38 Ill. 2d 581 (1967); *Calderwood Corp. v. Mahin*, 57 Ill. 2d 216, 220 (1974). See also *People v. Scudder Buick, Inc.*, 47 Ill. 2d 388, 389 (1971) (personal property taxes).

Other Illinois cases evince a tendency on the part of the Illinois courts to hold that legal questions about agency decisions should be raised by utilizing the statutory method of direct judicial review provided rather than by waiting until the enforcement stage. See, *e.g., City of Chicago v. O'Connell*, 278 Ill. 591, 607-08 (1917); *Fitt v. Central Illinois Public Service Co.*, 273 Ill. 617 (1916).

■■ It is the purpose of the FEPA to protect "equal employment opportunity or apprenticeship opportunity without discrimination because of race, color, religion, sex, national origin or ancestry" and to protect "employers, labor organizations and employment agencies from

unfounded charges of discrimination." (Ill. Rev. Stat. 1973, ch. 48, par. 851.) In furtherance of these purposes the act provides for confidential settlements and speedy adjudication. Our holding that par. 860 is the exclusive method for obtaining judicial review of the merits of a Commission decision does not injure the employer but protects the interests of the employee, as well as the public interest, in encouraging prompt compliance by the employer or its prompt test of the validity of the Commission's order.

■■ It has been held that the FEPA is to be liberally construed so as to avoid placing the Commission "at the mercy of any recalcitrant and litigious respondent." (*City of Chicago v. Fair Employment Practices Com.*, 32 Ill. App. 3d 242, 249 (1975).) The construction of the FEPA urged by the respondent could place the Commission at such a disadvantage. It could saddle the agency, which was duly constituted by the legislature to administer the FEPA, with the burden of continually going to court to argue the merits of its orders, even in instances in which the merits were not seriously in doubt, simply because a recalcitrant respondent refused to comply. We do not believe the legislature intended to place such a burden on the Commission. Rather, it intended that the respondent pursue judicial review by proceeding under the ARA and not by urging defenses which could be raised under the ARA when judicial enforcement is sought.

We must then determine whether any of the four defenses interposed by respondent may be properly raised in an enforcement proceeding under par. 861.

■■ The question is whether the defenses are within the permissible scope of inquiry by a court hearing a petition for enforcement of the administrative order, in this case one from which judicial review under the ARA was not sought. Clearly, in an enforcement action brought under par. 861 of the FEPA, the respondent could raise certain defenses even though it had not exhausted its right to judicial review under the ARA. (See *Stevens v. County of Lake*, 24 Ill. App. 3d 51, 55 (1974).) We have stated for example that one can test the constitutionality of the Administrative Review Act itself or show that the ARA did not provide an adequate remedy to redress an irreparable injury inflicted by an administrative agency. See *People ex rel. Stone v. Wilson*, 111 Ill. App. 2d 101, 104-06 (1969). See also *Illinois Bell Telephone Co. v. Allphin*, 60 Ill. 2d 350, 357-59 (1975); *Herman v. Village of Hillside*, 15 Ill. 2d 396, 408 (1958); *Peoples Gas Light & Coke Co. v. Slattery*, 373 Ill. 31, 44 (1939); *Bright v. City of Evanston*, 10 Ill. 2d 178, 185 (1956).

In this case Turner has not alleged or shown that pursuit of the procedure for judicial review under section 860 of the FEPA

incorporating the Administrative Review Act would have caused irreparable injury. Nor does it claim that either the ARA or the FEPA is unconstitutional.

A litigant may always, of course, question the jurisdiction of the administrative agency over the person or subject matter without exhausting administrative remedies or applying for judicial review under the ARA. (See Ill. Rev. Stat. 1973, ch. 110, par. 265; *Skokie Federal Savings & Loan Association v. Savings & Loan Board*, 88 Ill. App. 2d 373 (1967), and *City of Chicago v. Fair Employment Practices Com.*, 32 Ill. App. 3d 242 (1975).) Moreover, an objection to jurisdiction over person or subject matter is a permissible defense to an enforcement action. *Department of Finance v. Gold*, 369 Ill. 497, 504 (1938).

Paragraph 853(a) of the FEPA (Ill. Rev. Stat. 1973, ch. 48, par. 853(a), makes it an unfair employment practice:

> "For any employer, because of the * * * sex * * * of an individual to * * * discriminate against such individual with respect to * * * terms or conditions of employment."

The FEPC is authorized to inquire into the alleged commission by an employer of an unfair employment practice under paragraphs 858 and 858.01 of the FEPA (Ill. Rev. Stat. 1973, ch. 48, pars. 858, 858.01).

Turner does not claim that it is not an employer, as that term is defined in the Act (Ill. Rev. Stat. 1973, ch. 48, par. 852(d)), nor does it claim that jurisdiction was not obtained over its person due to a procedural defect.

None of Turner's defenses seem to claim that the FEPC did not have jurisdiction of the subject matter in the sense that it had authority to hear the class of cases to which this particular case belongs.[3]

It has been pointed out that "the power to decide includes the power to decide wrong * * * ." (*Baker v. Brown*, 372 Ill. 336, 343 (1939).) Moreover, the court in judicial review of administrative decisions may determine questions of both law and fact. (Ill. Rev. Stat. 1973, ch. 110, par. 274.) Thus the second defense Turner sought to raise in the enforcement proceedings (that the Commission's conclusion that pregnancy is a temporary physical disability is without evidentiary support and without legal foundation) and the third defense (that the Commission's conclusions that Turner's failure to treat pregnancy as any other temporary physical disability under its accident and sickness insurance policy was unlawful discrimination *is* erroneous as a matter of

---

[3] "While not strictly applicable to an administrative body, the term 'jurisdiction' may be employed to designate the authority of the administrative body to act, and as such, the term is governed by analogy to the rules which are applicable to the courts." *Beam v. Erven*, 133 Ill. App. 2d 193, 196 (1971). See also *Pocahontas Mining Co. v. Industrial Com.*, 301 Ill. 462, 474 (1922).

law) both attempt to review the merits of the agency's decision and are not permissible defenses in the enforcement proceedings under the analysis which we have made.[4]

The fourth defense:

> "The Commission's 'Guidelines on Discrimination In Employment Because of Sex,' specifically Sections X and XI, which require employers to treat pregnancy like any other temporary disability for the purpose, *inter alia*, of paying insurance benefits, create an unwarranted, irrebutable presumption that pregnancy, of itself, is a temporary disability. Such a presumption not only deprives Respondent of due process of law, but also, together with the requirement that an employer provide certain benefits to its female employees simply because they are pregnant, constitutes an unwarranted intrusion upon the employer-employee relationship and an improper expansion of the Commission's legal authority under the Act pursuant to which the Commission was created."

presents a more difficult question.

As we read the fourth affirmative defense it challenges the Commission's guidelines which require employers to treat pregnancy like any other temporary disability. This does not appear to raise a "jurisdictional" question, *i.e.*, a question whether the FEPC has the power and authority to hear the "class of cases to which the particular case belongs" (see *Pocahontas Mining Co. v. Industrial Com.*, 301 Ill. 462, 474 (1922). The guidelines promulgated by the agency constitute its attempt to construe the provisions of the statutory authority given to it by the legislature. The administrative agency has such authority, subject to judicial review as to its proper exercise. See *Mystik Tape v. Pollution Control Board*, 60 Ill. 2d 330, 335 (1975); *cf. Legg v. Fair Employment Practices Com.*, 28 Ill. App. 3d 932, 939 (1975), and *City of Cairo v. Fair Employment Practices Com.*, 21 Ill. App. 3d 358, 363 (1974).

Moreover, par. 264 of the Administrative Review Act provides that a rule, regulation, standard or statement of policy of an administrative agency implementing or interpreting the law administered by it is included in the definition of an administrative decision when "involved in a proceeding before the agency and its applicability or validity is in issue * * *." (Ill. Rev. Stat. 1973, ch. 110, par. 264.) The Illinois Supreme Court has interpreted this provision (in conjunction with par. 265 of the ARA providing for judicial review of "a final decision of any

---

[4] The first defense, that Turner was entitled to contest the validity of the FEPC's order even though it knowingly allowed the time period for filing a complaint under the Administrative Review Act to elapse, is precluded under our holding that the Administrative Review Act is the exclusive method for judicial review.

administrative agency" to be under the ARA when applicable) to preclude a challenge to the validity of a regulation involved in a proceeding by means other than review under the ARA. *People ex rel. Naughton v. Swank,* 58 Ill. 2d 95, 101-02 (1974).

Further, the guidelines are not subject to a collateral attack in enforcement proceedings on the basis of Turner's claim that they are based on premises which are erroneous or unconstitutional. An administrative agency may, on the basis of a showing that the law is contrary to its interpretation, change its interpretative guidelines (see 2 Am. Jur. 2d *Administrative Law* § 236) or the court which has the issue before it on judicial review under the Administrative Review Act may decide that the interpretation is invalid. See *People ex rel. Naughton v. Swank* 58 Ill. 2d 95, (1974). See also 2 Am. Jur. 2d *Administrative Law* § 251.

The further statements in the defense that the guidelines constitute "an unwarranted intrusion upon the employer-employee relationship and an improper expansion of the Commission's legal authority under the Act * * *" do not appear to us to add any additional questions of jurisdiction since they constitute a recitation of the alleged detrimental effects of the Commission's guidelines in support of the claim that the guidelines are erroneous as a matter of law. The Administrative Review Act provides adequate and complete procedures to test the validity of the policy statements involved in the proceeding and this precludes a review by means other than the Administrative Review Act. *(People ex rel. Naughton v. Swank,* 58 Ill. 2d 95 (1974).) The validity of the guidelines, in other words, may not be relitigated in an attempted collateral attack on the agency's decision by urging the issue as a defense in the enforcement proceeding.[5]

We conclude that the four affirmative defenses which have been certified to us do not raise questions cognizable in an enforcement action.

---

[5] We, of course, express no opinion on the merits of the defense. We note that the question of whether pregnancy may be considered a temporary disability under group insurance policies is presently before the United States Supreme Court for decision in *Liberty Mutual Co. v. Wetzel,* No. 74-1245; and *General Electric Co. v. Gilbert,* Nos. 74-1589 and 74-1590.

It may not be assumed by our holding that the failure to pursue judicial review under the Administrative Review Act under all circumstances will preclude a litigant from a hearing before a court in an affirmative action, rather than as a defense to the enforcement proceedings, when under the circumstances of a particular case the court decides that it would be inequitable not to hear the case because of the inadequacy of internal administrative review or judicial review under the Administrative Review Act. (*See, e.g., People ex rel. Hurley v. Graber,* 405 Ill. 331, 349-50 (1950); *People ex rel. Illinois Highway Transportation Co. v. Biggs,* 402 Ill. 401 (1949); *Horan v. Foley,* 39 Ill. App. 2d 458 (1963).) As pointed out in *Illinois Bell Telephone Co. v. Allphin,* 60 Ill. 2d 350 (1975), the exceptions to the requirement of exhaustion of remedies are confined to those instances in which the reasons for application of the doctrine are outweighed by other equitable considerations.

We therefore reverse the order of the trial court and remand the cause for further proceedings in the trial court in conformity with this opinion.

Reversed and remanded with directions.

GUILD, P. J., and HALLETT, J., concur.