THE PEOPLE ex rel. JAMES E. BOYLAN, County Treasurer, Plaintiff-Appellant, v. ILLINOIS CENTRAL GULF RAILROAD COMPANY et al., Defendants-Appellees.

Fourth District No. 13821

Opinion filed September 26, 1977.

CRAVEN, P. J., dissenting.

Ronald C. Dozier, State's Attorney, of Bloomington (Danny J. Leifel, Assistant State's Attorney, of counsel), for appellant.

Martin, Craig, Chester & Sonnenschein, of Chicago and Springfield (Charles G. Chester, Willard Ice, and Rodney W. Osborne, of counsel), for appellees.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Plaintiff appeals from the order of the trial court entered in consolidated cases which sustained defendants' (herein designated objectors) objections to certain real estate taxes which had been duly paid under protest and which ordered refunds to be made to the objectors.

The sole issue argued by the plaintiff (herein designated Collector) is whether the trial court had jurisdiction to hear and rule upon the tax objections filed.

In November 1974, the Department of Local Government Affairs (herein designated Department), determined the "fair cash value" of the property of the objectors as provided in section 80 of the Revenue Act of 1939 (Ill. Rev. Stat. 1973, ch. 120, par. 561). Section 1(24) of the Act (Ill. Rev. Stat. 1973, ch. 120, par. 482(24)) provides:

"[T]he term 'fair cash value' when used in this Act means 50% of the actual value of real and personal property."

Thereafter, the Department certified to the county clerk assessments upon the property of the respective objectors within the county which were 50 percent of the actual value of the several properties.

Effective in 1963, section 80 of the Act (Ill. Rev. Stat. 1973, ch. 120, par. 561), provided:

"The Department shall determine the equalized assessed value of the property of every railroad company, other than non-carrier real estate, by applying to its determination of the fair cash value of such property of every railroad company an equalization factor, which factor shall be the statewide average ratio of the equalized assessed value of locally assessed property to the full, fair cash value of such locally assessed property."

Section 86 of the Act (Ill. Rev. Stat. 1973, ch. 120, par. 567), provided:

"The Department shall distribute the equalized assessed value of the property of every railroad company (other than non-carrier real estate), when determined as prescribed in Section 80 of this Act, to the respective taxing districts entitled thereto and shall certify the same to the county clerks of the respective counties who shall extend taxes against such values the same as against other property in such taxing districts."

The objectors alleged and introduced record and documentary evidence to establish that the Department certified to the county clerk assessments of the property of the respective objectors at the "fair cash value" as defined. They also introduced evidence that the statewide average ratio of the Collector's assessed value of locally assessed property

for 1974 was 31 per cent of the actual fair cash value. The Collector introduced no evidence and there is no contradiction of the fact of such assessment as alleged in the objections.

The trial court found that the objections were made in apt time and proper form and that the property of the respective defendants was assessed at 50 per cent of the actual value contrary to the statutory provision which required equalization at "[T]he statewide average ratio of equalized assessed value of locally assessed property", and that such ratio for the year 1974 was 31 per cent. The court further found that such disparity was constructively fraudulent and warranted refund.

The Collector had filed a motion to dismiss the objections alleging that section 138 of the Act (Ill. Rev. Stat. 1973, ch. 120, par. 619) provides that the provisions of the Administrative Review Act govern the judicial review of the final administrative decisions of the Department, that no objection was filed to such assessment made by the Department, and that no proceedings in administrative review were brought within 35 days from the date of the final administrative decision (Ill. Rev. Stat. 1973, ch. 110, par. 267). Such motion was renewed throughout the hearing and the denial of the motion to dismiss is the sole issue argued here.

Such written motion of the objectors alleges:

> "That all objectors party hereto were notified of the determination as to assessed valuation with equalization factor applied by publication in November 1974, and by letter from the Department of Local Government Affairs within 30 days from said publication."

The Collector presented no evidence to support such allegations and we have not found the "letter" in the record. Exhibits introduced by the objectors contained a document dated November 8, 1974, designated "Public Notice" which states that the Department "has determined the 1974 assessed valuation of railroad property subject to its assessment jurisdiction * * *." So far as can be ascertained the values listed are the 50 percent actual cash values of the several railroads in the State. The notice included the language "Application for review of the foregoing will be received by the Department within 10 days from this date." Such application appears to be pursuant to section 137 of the Revenue Act of 1939 (Ill. Rev. Stat. 1973, ch. 120, par. 618), which provides:

> "Upon the *completion of the original assessments* to be made by the Department, it shall publish a full and complete list of such assessments in the State 'official newspaper.' Any person or corporation feeling aggrieved by any such assessment may, within ten days of the date of publication of such 'official newspaper' containing such list, apply to the Department for a review and correction of the assessment complained of. Upon such review the

Department may make such correction, if any, therein as may be just and right." (Emphasis supplied.)

The document included in objectors' exhibits appears to be the "original assessment" described in the section.

We conclude that the issue argued is controlled by *People ex rel. Cain v. Illinois Central R.R. Co.* (1965), 33 Ill. 2d 232, 210 N.E.2d 516. There the objectors paid the tax under protest alleging that the Department of Revenue assessed the railroad property at 100 percent of the "full, fair cash value" but that the locally assessed property was assessed and equalized at a level not exceeding 50 percent of the full fair cash value thereby creating a fraudulent discrimination against the objectors. The trial court struck the objection upon the motion by the collector which alleged that the objectors' sole remedy was administrative review and that the trial court had no jurisdiction to hear the objection.

The supreme court reversed and remanded, stating that the "precise issue" had been passed upon in *People ex rel. Hillison v. Chicago, Burlington & Quincy R.R. Co.* (1961), 22 Ill. 2d 88, 174 N.E.2d 175, and *People ex rel. Kohorst v. Gulf, Mobile & Ohio R.R. Co.* (1961), 22 Ill. 2d 104, 174 N.E.2d 182, and that it had been determined that the tax objection procedure was a proper remedy where it was alleged that there was fraudulent discrimination in valuation between railroad property assessed by the Department of Revenue and locally assessed and equalized property.

In *Cain*, as here, it was contended that the rule of *Hillison* and *Kohorst* was altered by the opinion in *People ex rel. Chicago & North Western Ry. Co. v. Hulman* (1964), 31 Ill. 2d 166, 201 N.E.2d 103, and *People ex rel. Nordlund v. Lans* (1964), 31 Ill. 2d 477, 202 N.E.2d 543. The court, in *Cain*, rejected such contention pointing out that in those cases the objections were to the original assessment and that in such circumstance the proper remedy was under the provisions of the Administrative Review Act. *Hulman* appears to have been an original assessment under the provision of section 137 of the Act (Ill. Rev. Stat. 1973, ch. 120, par. 618). In *Cain*, the court reiterated its language that administrative review is more appropriately applicable to original assessment than to the equalization of local assessments by the application of multipliers. The distinction made in *Cain* is maintained in *People ex rel. Korzen v. Fulton Market Cold Storage Co.* (1976), 62 Ill. 2d 443, 343 N.E.2d 450, and *County Collector of Rock Island County v. Redco, Ind.* (1973), 11 Ill. App. 3d 290, 296 N.E.2d 361.

In *Hamer v. Lehnhausen* (1975), 60 Ill. 2d 400, 409, 328 N.E.2d 11, 16, the court, speaking in a different context, stated:

"It is clear that the legislature did not intend the Department of

Local Government Affairs to have discretion as to whether to act as an equalizing authority. Instead, it stated the Department 'shall' perform that function and 'shall equalize the assessments between counties as in this Act provided.' (Ill. Rev. Stat. 1973, ch. 120, par. 627.) The mandatory duty of the Department in this respect is well settled."

Where the statute required that the administrative act be done, the failure or refusal of the Administrative Agency to perform the required Act is not a "final administrative decision" under section 138 (Ill. Rev. Stat. 1973, ch. 120, par. 619). The administrative act is required by the statute and there is no decision to be made. *People ex rel. Dickey v. White* (1965), 59 Ill. App. 2d 148, 204 N.E.2d 170.

The judgment of the trial court is affirmed.

Affirmed.

MILLS, J., concurs.

Mr. PRESIDING JUSTICE CRAVEN, dissenting:

I must respectfully disagree. The majority opinion really is to the effect that the railroads here involved need not exhaust, indeed need not even pursue, administrative remedies prior to having judicial review unaided by any administrative expertise. Such conclusion is supported by the *Cain, Kohorst,* and *Hillison* opinions cited. In *People ex rel. Chicago & North Western Ry. Co. v. Hulman* (1964), 31 Ill. 2d 166, 201 N.E.2d 103, the Illinois Supreme Court did hold that mandamus was not available to review assessments of railroads where, as here, the Revenue Act made administrative review available to the railroad. The court in *Hulman* clearly stated a requirement of exhaustion of administrative remedies as a condition precedent to the employment of pre-existing methods of judicial review. The court noted that in section 138 of the Revenue Act, it is provided in clear and express terms that "the provisions of the Administrative Review Act 'shall apply to and govern all proceedings for the judicial review of final administrative decisions of the Department hereunder.' " *Hulman,* 31 Ill. 2d 166, 170, 201 N.E.2d 103, 105.

Section 138 of the Revenue Act of 1939 (Ill. Rev. Stat. 1973, ch. 120, par. 619) is applicable here. In my judgment, judicial intervention in, or review of, assessment procedures or results is limited to administrative review as the exclusive remedy.

In *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 326 N.E.2d 737, the court again stated that administrative review was the remedy. *Allphin* related to the Messages Tax Act (Ill. Rev. Stat. 1971, ch.

120, par. 467 *et seq.*), not railroad assessment, but the message relating to the necessity of exhaustion of administrative remedies is the same. The reasons as stated by Justice Underwood are equally applicable:

"[T]he doctrine of exhaustion has long been a basic principle of administrative law—a party aggrieved by administrative action ordinarily cannot seek review in the courts without first pursuing all administrative remedies available to him. (*Myers v. Bethlehem Shipbuilding Corp.* (1938), 303 U.S. 41, 82 L. Ed. 638, 58 S. Ct. 26.) The rule is the counterpart of the procedural rule which, with certain exceptions, precludes appellate review prior to a final judgment in the trial court, and the reasons for its existence are numerous: (1) it allows full development of the facts before the agency; (2) it allows the agency an opportunity to utilize its expertise; and (3) the aggrieved party may succeed before the agency, rendering judicial review unnecessary. 2 F. Cooper, State Administrative Law 572-574 (1965); L. Jaffe, Judicial Control of Administrative Action 424-426 (1965); 3 K. Davis, Administrative Law Treatise secs. 20.01-20.10 (1958), and 1970 Supplement at 642-669." 60 Ill. 2d 350, 357-58, 326 N.E.2d 737, 741-42.

The actions of the departments of the executive branch here, as in *Allphin,* are reviewable by, and only by, administrative review.