LUCINDA ARKLEY, Admx., Defendant in Error, *vs.* WILLIAM C. NIBLACK, Receiver, Plaintiff in Error.

*Opinion filed February 16, 1916—Rehearing denied April 7, 1916.*

1. MINES—*instructions substantially in language of statute are proper if applicable.* In an action based upon a willful violation of the provisions of the Mines and Miners act, instructions substantially in the language of certain sections of said act are proper if applicable to the case.

2. SAME—*instruction substantially informing the jury contributory negligence of miner does not bar recovery is proper.* In an action based upon a willful violation of the Mines and Miners act, an instruction the effect of which is to inform the jury that contributory negligence of the miner in working after knowledge of the danger would not bar a recovery is proper.

3. SAME—*when an instruction is properly refused.* Where it is claimed by the plaintiff that the deceased miner ordered props of the required length the night before the accident and that the props should have been delivered at the working place during the night, so that when the deceased came in the morning he could use

them to prop the roof before beginning work·but that they were not so delivered, an instruction authorizing the jury to base their verdict upon their belief that even if the props had been delivered the deceased would not have used them to prop the roof before beginning work is properly refused.

4. SAME—*when failure of mine examiner to mark and report dangerous condition is not ground for a recovery.* Failure of the mine examiner to mark a loose rock in the roof of an entry and report it as dangerous. is not ground for a recovery, where the mine manager, after the miner had gone to work, came into the entry and inspected the roof, found the rock to be loose and dangerous, placed a mark thereon and ordered the miner to prop or remove it, as such action by the mine manager makes the situation the same as though the loose rock had been marked and reported by the examiner.

5. REHEARING—*a question decided will not be reconsidered on new points.* Where a question has been decided on all the arguments put forth by the parties in their briefs it will not be reconsidered on new points made in the petition for rehearing.

WRIT of ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. W. B. SCHOLFIELD, Judge, presiding.

H. M. STEELY, and CHARLES TROUP, (MASTIN & SHERLOCK, of counsel,) for plaintiff in error.

L. A. CRANSTON, and THOMAS A. GRAHAM, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

John R. Arkley, while in the employ of the plaintiff in error as a coal miner, was killed at his work in the mine by the fall of a rock on May 24, 1912. The plaintiff in error having elected not to provide and pay compensation as provided in the Workmen's Compensation act, the administratrix of Arkley's estate brought an action on the case for damages caused by his death, in the circuit court of Vermilion county and recovered a judgment for $5000, which the

Appellate Court for the Third District affirmed. On peti-
tion of plaintiff in error a writ of *certiorari* was awarded
and the record has been brought before us for review.

The errors argued by the plaintiff in error are, that the
court erred in refusing to direct a verdict for the defend-
ant, in giving instructions for the plaintiff and in refusing
instructions asked by the defendant.

The declaration consisted of four counts, two of which
were based upon the willful failure of the plaintiff in er-
ror to furnish props when demanded, and two on the charge
that the mine examiner willfully neglected to report a dan-
gerous condition existing at the deceased's working place
but reported it safe, while, in fact, the roof was in a dan-
gerous condition at the time of the examination of the
mine, which the mine examiner should have discovered and
reported.

The deceased and his buddy, Henry Moody, were
working in one of the entries of the mine at the time the
deceased was killed. They had been working in the same
place the day before, which was May 23, and in the morn-
ing of that day, before the men went to work, the mine
examiner had found a loose rock and had marked it as
dangerous. The deceased and his buddy were told of this
condition by the assistant mine manager and instructed to
remedy it. They removed part of the rock, including the
part bearing the examiner's mark, and went on with their
work. Early in the morning of the 24th the mine exam-
iner again examined the roof at this place but regarded it
as safe and made no danger mark. When the deceased and
Moody went to work on the morning of the 24th they tested
the roof and found a loose rock there but went to work
loading coal. About 10:30 the assistant mine manager vis-
ited their room, was told about the loose rock and sounded
the roof. He told them it was unsafe, put a cross-mark on
it, and testified that he told them to take the rock down.
Moody testified that he told them to watch it. Arkley and

Moody continued to work under the rock, loading coal, for an hour or more afterward, when a rock on which the loose rock in the roof rested, fell and killed Arkley.

Moody testified that they needed props six feet long to support the rock and they had none of the proper length, although there were some seven-foot props near; that on quitting work the day before he ordered some six-foot props in the usual way, by filling out a timber ticket for them and depositing the ticket in a box in the office, but no props were delivered in accordance with this demand. There was a dispute in the evidence as to whether any six-foot props were ordered and as to whether or not there were any such props at the place of the accident. The evidence was such as required its submission to the jury to determine whether any props of the required dimensions were demanded and not delivered, whether a dangerous condition existed at the time the examination was made on the morning of May 24, and whether the failure to furnish the props as demanded and the failure to mark the dangerous place were proximate causes of the deceased's injury. The motion to direct a verdict was properly denied.

Three instructions given for the plaintiff are complained of. Two are substantially in the language of the statute in regard to the duty of the mine owner to furnish props and of the miner to secure his place for his own safety and in regard to the duties of the mine examiner. They were applicable to the case and it was not erroneous to give them. The other instruction informed the jury that the fact that the deceased, after discovering that the rock in the roof was loose and pressing on another rock in the side of his working place and that neither of the rocks had any support under it, continued to work under and around such rocks until the time of the accident, would not, alone, bar recovery, if the jury believed, from a preponderance of the evidence, that the deceased came to his death as alleged in the second count, which charges a willful failure to deliver props as

demanded. This instruction amounted to telling the jury that contributory negligence by the deceased in working about the rocks after knowledge of the danger would not bar a recovery, and this is in accordance with the law. The instruction does not purport to inform the jury as to what it was necessary to prove to entitle the plaintiff to recover and is not subject to the criticism which is made upon it.

Plaintiff in error asked the following instruction, which the court refused to give:

"The court instructs the jury that although you may believe, from the evidence, that deceased and his buddy did not have timbers of the right length to prop and support the loose rock in the roof of the entry marked by McFadden, yet if you further believe, from the evidence, that deceased and his buddy did not intend to attempt to prop or support said rock or the side rock until after they had shoveled up and loaded the loose coal on the floor under said rocks, shot down the day before, and that it was while so doing and before the time had arrived when they intended to attempt to prop or support the rock or take it down, and that the failure to furnish timbers of the proper length, if there was any such failure, was not the proximate cause of the accident to and death of deceased, then no recovery can be had in this case because of or on account of a failure to furnish and deliver six-foot props, and on this issue your verdict should be for the defendant and you should find him not guilty."

It is argued that the testimony of Moody shows that he and Arkley did not intend to prop the rock until they had loaded the coal which was on the floor. The demand for props Moody testified was made on the evening of the day before the accident and they should have been delivered the next morning. They were not there when Arkley and Moody arrived and they went to loading coal. Moody testified that they did not have anything to prop the rock with except seven-foot props, which were too long; that they

did intend to prop the rock and did try some of the timbers there but found them too long. This instruction would have authorized the jury to base their verdict upon what they believed the deceased and his buddy would have done with the props if they had been delivered, although the demand and willful failure to deliver the props had been proved. The instruction was properly refused.

Instructions 18 and 20 are both based upon the hypothesis that the side rock which fell was solid at the time of the examination and became loose after the deceased went to work. They ignore the dangerous condition arising from the pressure of the loose rock in the roof resting upon the side rock. Even though the side rock was solid, the pressure of the loose rock resting upon it made a dangerous condition which could not be disregarded.

Instruction 22 was based upon a supposed custom for the assistant mine manager, McFadden, upon visiting the working places of the miners, to take orders for props, and it was properly refused because there was no evidence of such custom.

Instruction 21, which was refused, should have been given. It was as follows:

"The court instructs the jury that if you believe, from the evidence in this case, that the defendant's assistant mine manager entered John Arkley's working place at or about ten o'clock on the morning of the day of the accident in question and found a loose rock in the roof of the room and placed a conspicuous mark on it and told Arkley to take down or prop up such loose rock, and that such loose rock extended over and rested partly upon the rock which afterwards fell upon Arkley, and that Arkley failed to take down or prop up the rock so marked by the assistant mine manager, and afterward the loose rock caused the rock which fell upon Arkley to fall, and that the latter rock became loose and fell solely because the rock marked by the assistant mine manager had rested partly upon it, then in such

state of proof (if the proof so shows) you should find in favor of the defendant as to the third and fourth counts of the declaration."

We said in *Piazzi* v. *Kerens-Donnewald Coal Co.* 262 Ill. 30: "The conditions under which a miner may work at a dangerous place at his own risk are where the owner has complied with the law by having the mine examined, the dangerous place has been marked by the mine examiner, and the miner is sent to that place, by the direction of the mine manager, to. make safe the particular dangerous conditions there existing. Whether the failure of the mine examiner to mark the place was the proximate cause of the injury was a question of fact for the jury. The plaintiff had a right to rely upon the performance of the mine examiner's duty, and the absence of a mark indicated the opinion of the mine examiner that the clod was not dangerous. The plaintiff cannot be held guilty of contributory negligence in working under the clod. (*Mertens* v. *Southern Coal Co.* 235 Ill. 540.) If it had been marked dangerous he would probably not have given up the effort to get it down and gone under it to work and would not have been hurt." Here Arkley was not guilty of contributory negligence in working under the rock, since it had not been marked dangerous. If the mine manager, however, who represented the plaintiff in error and had a right to control Arkley in his work, afterward told him that the rock was dangerous and ordered him to remove it, Arkley no longer had a right to rely upon the opinion of the mine examiner. If the plaintiff in error had failed to mark a dangerous place, the failure was not beyond his power to correct. It was corrected if the dangerous condition was made known to the miner and he was told to make the place safe. This was what would have happened if the dangerous condition had been reported by the examiner. Arkley's and Moody's entrance checks would have been taken into the possession of the mine examiner and given to the mine manager, and

Arkley and Moody would have been informed by the mine manager, before entering the mine, of the dangerous condition and required to make it safe. This was not done, but if the mine manager, on discovering the dangerous condition, then informed Arkley and Moody and directed them to make the place safe, the situation then was the same as if the owner had complied with the law by having the mine examined, the dangerous place had been marked by the mine examiner, and the miner had been sent to that place, by the direction of the mine manager, to make safe the particular dangerous conditions there existing. It was error to refuse this instruction.

The judgments of the Appellate Court and the circuit court are reversed and the cause is remanded to the circuit court for a new trial.          *Reversed and remanded.*

Subsequently, on petition for rehearing, the following additional opinion was filed:

Per CURIAM: In a petition for rehearing the defendant in error insists that the evidence did not justify the giving of instruction No. 21, and that so far as such instruction was proper in the case it was covered by another given at the request of the plaintiff in error. No such argument was made in the brief of the defendant in error, but the only answer made to the argument of the plaintiff in error was that the instruction did not state a correct rule of law. The question was decided upon a consideration of all the arguments presented by either party. On a petition for rehearing new points which were not presented in the argument of the cause will not be considered. The petition for rehearing is therefore denied.          *Petition denied.*