(No. 46410.—)

CALDERWOOD CORPORATION, Appellee, v. GEORGE
E. MAHIN, Director of Revenue, Appellant.

*Opinion filed May 20, 1974.*

William J. Scott, Attorney General, of Springfield
(Paul J. Bargiel and A. Zola Groves, Assistant Attorneys
General, of counsel), for appellant.

Jack H. Anderson, of Charleston, for appellee.

MR. JUSTICE WARD delivered the opinion of the
court:

On November 3, 1972, the circuit court of Coles
County on the petition of the Calderwood Corporation
(hereafter Calderwood) enjoined the defendant, the Direc-
tor of Revenue, from collecting certain amounts allegedly
owed by Calderwood under the Illinois Retailers' Occupa-
tion Tax Act on sales by Calderwood to the Vesuvius
Crucible Company (Vesuvius). The ground of the court's
holding was that the sales by Calderwood were sales for
resale and thus exempted from the provisions of the
Retailers' Occupation Tax Act. The Director appealed to
the appellate court, which transferred the case here,
because it considered that the effect of the trial court's
action was to hold a part of the statute unconstitutional.

Calderwood is an Illinois corporation which manufactures refractories used in the smelting and fashioning of metals. Under an exclusive sales contract Calderwood sells all of its production or output to Vesuvius, a Pennsylvania corporation. The defendant states Calderwood has no sales force and that it was organized solely for the purpose of supplying Vesuvius. Vesuvius does not use any of the refractories but sells them throughout the United States and abroad. When purchasing, Vesuvius instructs Calderwood where the refractories are to be shipped. Calderwood shipped certain refractories directly to customers of Vesuvius in Illinois and the assessment of the retailers' occupation tax by the Director on these sales developed the controversy in this case.

Section 1 of the Retailers' Occupation Tax Act provides in part: " 'Sale at retail' means any transfer of the ownership of or title to tangible personal property to a purchaser, for the purpose of use or consumption, and not for the purpose of resale." However, that section also states, "Sale at retail shall be construed to include any transfer of the ownership of or title to tangible personal property to a purchaser, for use or consumption by any other person to whom such purchaser may transfer the tangible personal property without a valuable consideration, and to include any transfer, whether made for or without a valuable consideration, for resale in any form as tangible personal property unless made in compliance with Section 2(c) of this Act." Ill. Rev. Stat. 1969, ch. 120, par. 440.

Section 2(c) states:

"If the purchaser is not registered with the Department as a taxpayer, but claims to be a reseller of the tangible personal property in such a way that such resales are not taxable under this Act or under some other tax law which the Department may administer, such purchaser *** shall apply to the Department for a resale number. ***

Except as provided hereinabove in this Section, no

sale shall be made tax-free on the ground of being a sale for resale unless the purchaser has an active registration number or resale number from the Department and furnishes that number to the seller in connection with certifying to the seller that any sale to such purchaser is nontaxable because of being a sale for resale." Ill. Rev. Stat. 1969, ch. 120, par. 441c."

Article 13 of the Department's Rules and Regulations provides:

"A person who sells tangible personal property to a purchaser who may use or consume such property within the meaning of the Act, but who also may resell such property, must determine, at the time he sells the property to such purchaser, whether the purchaser is buying the property 'for use or consumption' within the meaning of the Act or whether the purchaser is buying the property 'for resale'. This determination is required in order that the seller may properly file the returns required by the Act and compute his tax liability.

\* \* \*

A certificate of Resale is a statement signed by the purchaser that the property purchased by him is purchased for purposes of resale. Provided that this statement is correct, the Department will accept Certificates of Resale as prima facie proof that sales covered thereby were made for resale.

\* \* \*

Except as provided hereinabove in this regulation, no sale shall be made tax-free on the ground of being a sale for resale unless the purchaser has an active registration number or resale number from the Department and furnishes that number to the seller in connection with certifying to the seller that any sale to such purchaser is nontaxable because of being a sale for resale." Department of Revenue, Rules and Regulations, art. 13.

It is undisputed that Vesuvius did not obtain a resale number from the Department of Revenue and that it did not furnish a resale certificate to Calderwood.

In 1970 the Illinois Department of Revenue conducted an audit of Calderwood's records and thereafter, in an

assessment, claimed the audit disclosed that Calderwood had a total tax liability of $3,227.95. The assessment stated that $1,101.21 of this amount represented liability under the Retailers' Occupation Tax Act. When Calderwood did not satisfy the claimed liability, the Department, on October 20, 1970, sent Calderwood a notice of tax liability for $3,461.28, the additional $233.33 being attributable to accumulating penalties and interest. The notice stated in part: "Unless you notify the Department of Revenue in writing, within 20 days after the date of this notice, that you protest this Notice of Tax Liability and request a hearing, this Notice will automatically become a Final Assessment without any further notice to you. Your failure to notify the Department of Revenue in the manner provided herein constitutes a waiver of your right to such hearing." *Cf.* Ill. Rev. Stat. 1969, ch. 120, par. 443.

Calderwood did not give any notification of protest or objection to the Department but on November 4, 1970, it filed a complaint in the circuit court of Coles County to enjoin the Department of Revenue from collecting the portion of the assessment attributable to its alleged liability under the Retailers' Occupation Tax Act, *i.e.*, to the extent of $1,396.82. Calderwood acknowledged its liability for the balance of the assessment, which was based on liability for other classes of taxes, but denied liability under the Retailers' Occupation Tax Act. Calderwood claimed the defendant improperly assessed it for sales made to Vesuvius when Vesuvius had acquired the property for resale to customers in Illinois.

At the hearing in the circuit court Calderwood also contended that Vesuvius's not applying for a resale number and Calderwood's not securing a resale certificate from Vesuvius were of no consequence, because in fact the sales in question were sales for resale. Calderwood argued that section 2(c) and article 13 were unconstitutional and void in that they sought to transform a sale not subject to

the retailers' occupation tax, *i.e.,* a sale for resale, into a sale subject to the tax. It also contended the sales were sales in interstate commerce and exempt from the tax.

Calderwood repeats these contentions here but we will not reach them under the disposition we make of this case. As the defendant correctly argues, Calderwood was obliged to seek relief under the Administrative Review Act and proceeded improperly when it sought injunctive relief in the circuit court.

The Administrative Review Act provides, *inter alia,* "This Act shall apply to and govern every action to review judicially a final decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of this Act. In all such cases, any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not be employed \*\*\*." (Ill. Rev. Stat. 1969, ch. 110, par. 265.) Section 12 of the Retailers' Occupation Tax Act provides that all proceedings for the judicial review of final administrative decisions of the Department shall be governed by the Administrative Review Act. Ill. Rev. Stat. 1969, ch. 120, par. 451.

It is clear from our decisions that if a proceeding is not brought under the Administrative Review Act for judicial review of the Department's final assessment the assessment will be conclusive as to all questions affecting its merits. A defense as to the merits of the case must be raised through administrative review or it will be considered waived. *Department of Revenue v. Steacy,* 38 Ill.2d 581; *Department of Revenue v. Downstate Coal Co.,* 11 Ill.2d 317; *Moline Tool Co. v. Department of Revenue,* 410 Ill. 35; *cf. Weil-McLain Co. v. Collins,* 395 Ill. 503, 506; *Department of Finance v. Sinclair,* 382 Ill. 118, 120; *Department of Finance v. Kilbane,* 381 Ill. 117, 119; *Department of Finance v. Huizenga,* 379 Ill. 357, 358; *Department of Finance v. Gold,* 369 Ill. 497, 503-505; Ice, The Retailers' Occupation Tax Act and Related Tax Laws, 1961 U. Ill. L.F. 614, 644.

Illustrating, in *Department of Revenue v. Steacy,* 38 Ill.2d 581, the Department of Revenue had successfully brought suit to recover unpaid retailers' occupation taxes against a defendant who previously had failed to seek judicial review of the assessment of the taxes. On appeal, the taxpayer claimed that the trial judge's refusal to grant him a jury trial deprived him of a constitutional right. This court affirmed, stating,

"Before there is a right to a jury trial there must be an issue of fact to be determined. There is no such issue in this case.\*\*\*

The issues sought to be raised by the defendant in this action could have been raised in administrative proceedings before the Department, and its determination could have been challenged under the Administrative Review Act. They are not open for consideration in the present action. \*\*\* 'If the assessment was not proper or regular, the taxpayer should have, within the time provided, protested the assessment, and the Department of Revenue would have set a hearing on the matter. If the taxpayer is not satisfied, there is provision for judicial review of the determination. [Citation.]' " *Department of Revenue v. Steacy,* 38 Ill.2d 581, 582-583.

Calderwood's citation of *Owens-Illinois Glass Co. v. McKibbin,* 385 Ill. 245, and *Baumgardt v. Isaacs,* 29 Ill.2d 29, does not support its contention that it was not required to proceed under the Administrative Review Act. Neither of these cases involved a "final administrative decision" of the Department of Revenue, the judicial review of which is governed by the Administrative Review Act. Ill. Rev. Stat. 1971, ch. 120, par. 451.

At the failure of Calderwood to seek review under the Administrative Review Act, the final assessment of the Department became conclusive and the Department was entitled to judgment dismissing the complaint.

The judgment of the circuit court of Coles County is reversed and the cause is remanded with directions to dismiss the complaint.

*Reversed and remanded,*
*with directions.*