SAXON-WESTERN CORPORATION, Plaintiff-Appellant, *v.* GEORGE E. MAHIN, Director of the Department of Revenue, *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 60982

Opinion filed June 1, 1976.

Marks, Katz, Walker & Blatt, of Chicago (Donald L. Johnson, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago (Ann Sheldon, Assistant Attorney General, of counsel), for appellees.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Saxon-Western Corporation, brought a class action suit on behalf of itself and other similarly situated retailers in Illinois against George E. Mahin, Director of the Department of Revenue of the State of Illinois; William J. Scott, Attorney General of the State of Illinois; and Alan J. Dixon, Treasurer of the State of Illinois. Plaintiff sought to enjoin the Department of Revenue from assessing or collecting the Retailers' Occupation Tax (Ill. Rev. Stat. 1971, ch. 120, par. 440 *et seq.*), on the stated value of trading *coupons* issued by plaintiff in its retail business for redemption by plaintiff only. Plaintiff further prayed for a declaratory judgment declaring that Rule 46 of the Rules of the Department of Revenue is both contrary to law and violative of the State and Federal constitutions.

The trial court issued a temporary injunction preventing both the Director and the Treasurer from proceeding pursuant to a notice of tax liability previously issued to plaintiff by the Director. The action was filed within the 20-day protest period following the issuance of the notice of tax liability. It was also ordered that all other matters pertaining to plaintiff's alleged tax liability be held in abeyance pending the outcome of this litigation.

Thereafter, pursuant to defendants' motion, the trial court dismissed plaintiff's complaint and dissolved the injunction upon the authority of *Calderwood Corp. v. Mahin,* 57 Ill. 2d 216, 311 N.E.2d 691, wherein the Supreme Court stated that an aggrieved taxpayer is required to exhaust its administrative remedies prior to seeking judicial review of an administrative action. In addition, the trial court's order of dismissal specifically provided that, in the event plaintiff appealed from the dismissal of its complaint, all proceedings would be stayed and no final assessment issued under the notice of tax liability.

Plaintiff then perfected this appeal, whereby it urges reversal of the order of dismissal and remandment of the cause with directions that the trial court either enter judgment in favor of plaintiff, or consider the merits of the case. In support of its position on appeal, plaintiff contends

that Rule 46 is unconstitutional, unlawful, and unauthorized by law with respect to its applicability to trading *coupons,* and as such, the Department should be enjoined from the collection of taxes thereunder. Alternatively, plaintiff maintains that it should be afforded the same procedural treatment as the taxpayer in *Illinois Bell Telephone Co. v. Allphin,* 60 Ill. 2d 350, 326 N.E.2d 737, and hence, that the cause should be remanded for further proceedings. Due to our resolution of the procedural issue presented, we consider it unnecessary to address the constitutional questions raised by plaintiff.

■■ In 1943 in the case of *Owens-Illinois Glass Co. v. McKibbin,* 385 Ill. 245, 52 N.E.2d 177, our Supreme Court recognized that two exceptions had been judicially carved out in Illinois from the general rule that a court will not take equitable jurisdiction of a matter when there exists an adequate remedy at law. It was there stated:

> " * * * that from an early date the courts of this State have regarded the enjoining of the collection of an illegal tax, or the assessment of an authorized tax upon property which is not subject to taxation, as exceptions to the rule * * *." (385 Ill. 245, 252, 52 N.E.2d 177, 181.)

The court reasoned that even though a statutory remedy may be available to the taxpayer, this remedy at law was merely cumulative to the taxpayer's right to seek equitable relief, and the taxpayer may elect which remedy to pursue when attempting to avoid the burden of a tax. The court elucidated the limited scope of the equitable remedy, however, by noting that it pertained only to illegalities, and not to irregularities, in the imposition of a tax.

■■■ On May 20, 1974, the Supreme Court in *Calderwood Corp. v. Mahin* ruled:

> "Section 12 of the Retailers' Occupation Tax Act provides that all proceedings for the judicial review of final administrative decisions of the Department [of Revenue] shall be governed by the Administrative Review Act. Ill. Rev. Stat. 1969, ch. 120, par. 451." (57 Ill. 2d 216, 220, 311 N.E.2d 691, 693.)

In accordance with this decision, a taxpayer must exhaust its administrative remedies prior to seeking equitable relief from a final tax liability assessment issued by the Department because "if a proceeding is not brought under the Administrative Review Act for judicial review of the Department's final assessment the assessment will be conclusive as to all questions affecting its merits" (57 Ill. 2d 216, 220, 311 N.E.2d 691, 693), and any defense to the assessment will be considered waived. The threshold inquiry for determining if the Administrative Review Act is applicable is whether the assessment issued by the Department has become final. In the case before the Supreme Court, since the taxpayer

had neglected to file a protest to the notice of tax liability within the 20-day statutory period (Ill. Rev. Stat. 1971, ch. 120, par. 443), the assessment became final and subject to review pursuant to the Administrative Review Act. Accordingly, the court directed the trial court to dismiss plaintiff's complaint because of the taxpayer's failure to exhaust its administrative remedies. The court commented that the taxpayer's reliance on *Owens* was misplaced since a final administrative decision of the Department was not involved in *Owens,* and therefore, the Administrative Review Act would not govern in that situation.

The effect of the *Owens* and *Calderwood* decisions was summarized in *Illinois Bell Telephone Co. v. Allphin.* The *Owens* doctrine was interpreted as extending two exceptions to well-established legal principles. First, with respect to administrative law, the *Owens* rationale exempted taxpayers in certain circumstances from the requirement of exhausting their administrative remedies prior to seeking judicial relief. Second, with respect to fundamental rules of equitable jurisdiction, *Owens* provided an exception to the general rule that a court of equity will not take jurisdiction of a cause when an adequate remedy is available at law.

■■ After reviewing *Calderwood* and the legislative intent underlying the Administrative Review Act, the court in *Illinois Bell* held "that as to those situations covered by the Administrative Review Act, the *Owens* exceptions are no longer applicable." (60 Ill. 2d 350, 359, 326 N.E.2d 737, 742; see *Head-On Collision Line, Inc. v. Kirk,* 36 Ill. App. 3d 263, 343 N.E.2d 534.) But the court found that this specific holding could not be applied to the facts before it since the plaintiff-taxpayer had relied upon *Owens* and had filed its complaint some 10 months before the *Calderwood* decision was handed down. Moreover, unlike the situation in *Calderwood,* the trial court in *Illinois Bell,* though erroneously for lack of any such power, had expressly tolled the 20-day protest period, and therefore, the assessment had not become final. Consequently, fundamental fairness dictated that the merits of the case be decided on the basis of *Owens.*

Because of the factual similarity of the instant case with *Illinois Bell,* we consider the reasoning of *Illinois Bell* to be dispositive of this appeal. Contrary to the trial court's ruling that this action is controlled by *Calderwood,* we find that the chronology of events and the compelling factors which were present in *Illinois Bell* and which necessitated a decision predicated upon the *Owens* doctrine are also present in this case.

■■ As in *Illinois Bell,* there appears from the record to have been no justifiable reason in the instant case for the trial court to toll the 20-day protest period. Consequently, this order was erroneous. (60 Ill. 2d 350,

356, 326 N.E.2d 737, 741.) However, again as in *Illinois Bell,* when the order was entered, time still remained within which the taxpayer could have complied with the 20-day statutory requirement, and its failure to do so resulted from its reliance upon the trial court's order. Furthermore, the Department of Revenue was a party to those proceedings and was aware of the taxpayer's reliance thereon. Since the taxpayer filed its complaint more than 20 months prior to the filing of the *Calderwood* opinion, the taxpayer's reliance upon *Owens* for seeking equitable relief was justified. (See *Sta-Ru Corp. v. Mahin,* 34 Ill. App. 3d 653, 338 N.E.2d 906.) On nearly identical circumstances, the court in *Illinois Bell* treated the taxpayer before it as having constructively complied with the 20-day statute, and this treatment prevented the notice of tax liability from maturing into a final assessment. As a result, administrative review as required by *Calderwood* was not applicable for want of a final administrative decision, and a remandment was ordered for a hearing on the merits.

■■ Similarly, we consider the instant taxpayer as being in constructive compliance with the 20-day statute. It now becomes necessary to determine whether plaintiff's complaint is legally sufficient under *Owens* to invoke the equitable jurisdiction of the trial court, and thus require a remandment of the cause for a hearing on the merits.

The gravamen of the complaint is that defendants are attempting to assess and collect a tax pursuant to the Retailers' Occupation Tax Act which is "illegal, unauthorized and invalid." Although we need not and do not express any opinion as to the merits of the legal conclusions alleged in the complaint, it is essential to ascertain the origin of the purported tax being imposed by defendants.

Sections 1 and 12 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1971, ch. 120, pars. 440 and 451) provide in pertinent part as follows:

"§1 * * *

* * *

Selling price or the amount of sale means the consideration for a sale valued in money whether received in money or otherwise, including cash, credits, property other than tangible personal property and services * * *.

Gross receipts from the sales of tangible personal property at retail means the total selling price or the amount of such sales, as hereinbefore defined. * * *

* * *

Persons who engage in the business of transferring tangible personal property upon the redemption of *trading stamps* are engaged in the business of selling such property at retail and shall be liable for and shall pay the tax imposed by this Act on the basis

of the retail value of the property transferred upon redemption of such stamps." (Emphasis added.)

"§ 12. The Department is authorized to make, promulgate and enforce such reasonable rules and regulations relating to the administration and enforcement of the provisions of this Act as may be deemed expedient."

Pursuant to the authority granted by section 12 of the Act, the Director of Revenue issued Rule 46 on August 20, 1971, which states as follows:

"Persons who engage in the business of transferring tangible personal property upon the redemption of *trading stamps* shall be deemed to be engaged in the business of selling such property at retail and shall be liable for and shall pay the tax imposed by the Retailers' Occupation Tax Act on the basis of the retail value of the property transferred upon redemption of such stamps. *When merchandise is paid for partly in cash and partly by surrendering a trading stamp valued at a specific amount, the total amount (including the value of the surrendered trading stamp) is subject to retailer's occupation tax.*

*The same principles apply to trading coupons * * *."* (Emphasis added.)

Plaintiff contends that the portion of Rule 46 which relates to trading coupons and which provides for the taxation of trading coupons in the same manner as the taxation of trading stamps is not authorized by law. Plaintiff argues that trading coupons, unlike trading stamps, offer a marketing device which provides retailers with an alternative means for extending a discount to its customers on the regular selling price of particular items of tangible personal property. Plaintiff analogizes the situation of taxing trading coupons with the situation of imposing a tax based upon the regular selling price of an item of merchandise even though the article was sold at a sale price. Plaintiff points out that both situations are two different techniques of extending a discount to the consumer. In neither situation, plaintiff maintains, should the amount of discount be subject to the Retailers' Occupation Tax, regardless if the discount is offered by way of coupon, or by merely reducing the regular selling price.

■■ ■ Without elaborating on the distinction between trading coupons and trading stamps and the varying tax considerations each has received in other jurisdictions, we hold that the allegations of fact contained in plaintiff's complaint are legally sufficient under *Owens* to state a cause of action for equitable relief; plaintiff alleged certain illegalities, as opposed to irregularities, in the imposition of the Retailers' Occupation Tax. Of course, whether trading coupons should be subject to that tax is a matter outside the scope of this opinion and presents a

question for legislative debate. But the fact remains that the operative provisions of the Retailers' Occupation Tax Act do not expressly provide for the taxation of the stated value of trading *coupons*. Consequently, the trial court erroneously dismissed plaintiff's complaint, and the cause must be remanded for further proceedings consistent with this opinion.

Reversed and remanded with directions.

HAYES and DOWNING, JJ., concur.