MID-CONTINENTAL REALTY CORPORATION, Plaintiff-Appellee, *v.* BERNARD J. KORZEN, County Treasurer and Ex-Officio County Collector of Cook County, *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 59092

---

Opinion filed May 4, 1976.—Supplemental opinion filed upon denial of rehearing July 20, 1976.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner, Henry A. Hauser, and Alan L. Fulkerson, Assistant State's Attorneys, of counsel), for appellants.

William J. Harte, Ltd., and Greenburger, Krauss & Jacobs, Chartered, both of Chicago (William J. Harte, David Glickstein, and Terry M. Gordon, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

The circuit court of Cook County granted Mid-Continental Realty Corporation (hereinafter plaintiff) injunctive relief restraining certain county officials (hereinafter defendants) from collecting 1971 real estate taxes on plaintiff's properties based on increased assessments made by the County Assessor (Assessor) which the court determined to be unauthorized by law and constructively fraudulent. The decree found the 1971 assessments illegal and void and ordered the 1968 assessments reinstated. Defendants challenge this decision arguing: (i) equitable relief was improper since plaintiff's proper remedy was at law; and (ii) the trial court erred in finding that the 1971 assessments were constructively fraudulent.

Count I of plaintiff's three-count amended complaint alleged ownership of 12 parcels of real estate located in the City of Chicago; that these properties were assessed at $15,496,537 in 1969 based on the 1968 quadrennial assessment; that in 1970, a nonquadrennial year, the Assessor increased the assessed value of these properties to $21,237,950, an increase of $5,741,413 or 37% over the 1969 assessment; that plaintiff challenged the legality of the 1970 increase before the Board of Appeals of Cook County and the circuit court of Cook County, and the court permanently enjoined the collection of any taxes based on the 1970 increased assessments.[1] Plaintiff further alleged that in 1971 the Assessor again assessed plaintiff's properties at $21,237,950.

In challenging the 1971 assessments, plaintiff raised no issue as to the failure to give notice and a hearing on the increased nonquadrennial assessments. Rather, plaintiff alleges in its amended complaint that plaintiff submitted evidence of a financial nature to the Assessor reflecting a change in the financial circumstances of the properties between 1970 and 1971 — showing little or no increase in gross income and increased expenses in operating and maintaining the properties. Nevertheless, the Assessor increased the property assessments as aforesaid, resulting in a 1971 tax increase of over $700,000. Plaintiff alleged this increase was not based on any rationale whatsoever and was arbitrary, erroneous, void, illegal, invalid, and unconstitutional. Plaintiff presented its objections to the Board of Appeals, but the Board refused to alter the assessments.

---

[1] This court affirmed that decision on the basis that the Assessor failed to follow the statutorily prescribed procedure by neglecting to give the taxpayer notice and a hearing on the increased assessments in a nonquadrennial year. *Goodfriend v. Board of Appeals* (1st Dist. 1973), 18 Ill. App. 3d 412, 305 N.E.2d 404.

Alleging irreparable harm because of these invalid and discriminatory assessments and the unavailability of an adequate remedy at law, plaintiff prayed for a temporary injunction restraining the collection of any tax based on these assessments, and that such temporary injunction be made permanent after a full hearing on the merits. Two other counts in the amended complaint, not pertinent to the issues raised in this appeal, will not be discussed.

The circuit court ordered plaintiff to pay the first installment of the property taxes allegedly due June 1, 1972. However, plaintiff did not pay any of the taxes based on the increased 1971 assessments. On August 16, 1972, plaintiff was granted a preliminary injunction to enjoin the collection of this tax. In its written order allowing the preliminary injunction, the trial court noted that plaintiff's remedies at law were not adequate in that (1) the legal remedies did not provide for payment of interest to the taxpayer who pays under protest, and (2) the amount in dispute was so substantial as to support the contention that plaintiff was financially unable to pay the higher tax at this time. Furthermore, the court found defendants would suffer no harm by the allowance of the injunction since, if defendants prevailed, they would be paid the entire amount of the tax plus interest.

No appeal was taken from the preliminary injunction. Instead defendants filed their answer to plaintiff's amended complaint. Both parties made motions for summary judgment which were denied.

Plaintiff, in support of its case, called employees of the Assessor who testified that the Assessor's office attempted to assess income-producing property at one-third of its fair market value, and that there was no increase or decrease in the assessed valuations for 1970 and 1971. Three real estate appraisers testified on behalf of the plaintiff that the fair market value of plaintiff's properties ranged from $33,945,000 to $41,357,251. Plaintiff's testimony further indicated that the assessed values placed upon each of the plaintiff's property by the Assessor exceeded one-third of the fair market value. As a part of the plaintiff's case, the parties stipulated "that the Assessor attempted to assess all income-producing properties at one-third the fair market value."

The defendants' testimony established that in 1969 the Assessor set the total fair market value of the properties at $46,490,691 and in 1971 at $63,492,150. The chief deputy assessor testified that in 1971 no ratios were employed in Cook County between assessed valuation and fair market value. Two witnesses, employees of the Assessor who had been called as witnesses for the plaintiff, recanted their testimony that the Assessor applied a formula of one-third of the fair market value.

The trial court granted plaintiff a temporary injunction enjoining a tax sale of plaintiff's properties which had been threatened by defendants.

Thereafter the court issued a memorandum opinion and ruling finding the 1971 assessments to be in violation of the law and constructively fraudulent. Thereupon the decree and judgment order enjoining the collection of any tax based on the 1971 assessments was entered. This appeal followed.

## I.

■■ Under the Revenue Act of 1939 a taxpayer may object to an assessment of his property by paying the property tax under protest and filing a written objection in the circuit court to the County Collector's application for judgment and order of sale. (Ill. Rev. Stat. 1969, ch. 120, pars. 675, 716; see Gore and Emmerman, *Real Estate Tax Assessments—A Study of Illinois Taxpayers' Judicial Remedies,* 24 DePaul L. Rev. 465 (1975).) The taxpayer then can present evidence at a hearing before the circuit court. If the taxpayer prevails on his objection, a tax refund is ordered; but if the objection is overruled, the taxes are unaffected and the objection or protest is stricken.

Our supreme court has recently held:

> "[T]hat where a taxpayer has an adequate remedy at law equity will not assume jurisdiction unless the tax is unauthorized by law or is levied upon exempt property. *(Clarendon Associates v. Korzen,* 56 Ill. 2d 101; *La Salle National Bank v. County of Cook,* 57 Ill. 2d 318.) The remedy provided by law is the statutory remedy of paying the tax under protest and filing an objection to the application for judgment. (Ill. Rev. Stat. 1973, ch. 120, pars. 675, 716.)" *North Pier Terminal Co. v. Tully* (1976), 62 Ill. 2d 540, 545-46, 343 N.E.2d 507, *rehearing denied,* March 25, 1976.

In addition to the cited situations where equity will assume jurisdiction, our supreme court has fashioned a third, that is where the tax is constructively fraudulent and the taxpayer has no adequate remedy at law. *Hoyne Savings & Loan Associations v. Hare* (1974), 60 Ill. 2d 84, 322 N.E.2d 833; *La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 312 N.E.2d 252; *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 306 N.E.2d 299.

The threshold question is whether the chancery division of the circuit court properly had jurisdiction of plaintiff's objection to the property assessments. The properties in this case were not exempt properties. Therefore, initially we must determine whether the revision of the 1968 assessments was unauthorized by law and whether the remedy at law was inadequate in view of the allegation of constructive fraud.

## A.

First we consider whether the revised assessments were unauthorized by law. In its judgment order, the trial court found there was no

complaint initiated by the taxpayer for a revision of the 1968 quadrennial assessments, and that there was no rational basis for any upward revision in 1971 of the 1968 assessments. The court concluded that the 1971 assessments were rendered in violation of chapter 120, sections 501, 511, and 578 of the 1969 Illinois Revised Statutes. While not mentioned in the judgment order, the trial court noted in its memorandum opinion and ruling that there was no evidence submitted to prove that the Assessor appended an affidavit to the assessment books as required by law.

The Revenue Act (hereinafter Act), section 30 (Ill. Rev. Stat. 1969, ch. 120, par. 511) provides that the Assessor determine the assessments for certain properties and that those assessments continue for a "quadrennial," that is, for a four-year period. The Assessor may revise the quadrennial assessments if he does so in compliance with section 97 of the Act. (Ill. Rev. Stat. 1969, ch. 120, par. 578.) That section provides in part:

> "[T]he county assessor shall have authority annually to revise the assessment and correct the same as shall appear to him to be just, and on complaint in writing in proper form by any taxpayer, and after affording such taxpayer an opportunity to be heard thereon, he shall do so at any time before the assessment is completed and verified. On any such revision by the county assessor, except where such revision is made on complaint of the owner, no assessment shall be increased without previous notice to the owner and an opportunity to be heard. When the county assessor has completed such revision and correction and entered the changes and revision in the assessment books, an affidavit shall be appended to each of such assessment books in the form required by law, signed by the county assessor."

■■■ The trial court stated in its memorandum that the Assessor had no power to alter the assessments on his own authority during a nonquadrennial year. As we understand the trial court's position, the quadrennial assessments may only be revised by the Assessor on the written complaint of the taxpayer, unless the Assessor were to confess a fraudulent underassessment or overassessment of the property. We disagree with this interpretation. While the conjunctive "and" is used to connect the power of the Assessor to annually revise an assessment as "shall appear to him to be just," with the power of the Assessor to revise the assessment on written complaint of the taxpayer, we hold a reasonable reading of the statute implies there are two separate methods by which an assessment may be modified by the Assessor — they are not dependent on one another. The next sentence of that same section provides, "[o]n any such revision by the county assessor, *except where such revision is made on complaint of the owner, * * *.*" (Emphasis supplied.) A negative implication of this provision is that there are

situations in which the assessment may be changed without a written complaint by the owner. Furthermore, cases challenging the modification of an assessment in a nonquadrennial year appear to challenge modifications initiated by the Assessor, not by the taxpayer or owner. (See *Exchange National Bank v. Cullerton* (1st Dist. 1974), 20 Ill. App. 3d 370, 372, 314 N.E.2d 271; *Goodfriend v. Board of Appeals* (1st Dist. 1973), 18 Ill. App. 3d 412, 424, 305 N.E.2d 404.) Both *Exchange* and *Goodfriend* hold that an assessment is unauthorized by law where the assessor fails to give the taxpayer notice and a hearing as to a proposed assessment increase in a nonquadrennial year. In the case at bar, the parties stipulated that adequate notice and a hearing on the proposed changes were given. Plaintiff contends the Assessor had no authority to initiate a change without the written complaint of the owner or taxpayer. In our opinion the trial court erred in finding that the Assessor had no authority to revise assessments on his own initiative where he deemed it was just, and where the taxpayer was given proper notice and an opportunity to be heard before the revisions were made.

■■ The second ground on which the trial court found the increased assessments were unauthorized was that there was no "rational basis" for the increase. However, this goes to the manner in which the Assessor exercised his power, not to whether he had the power to act. The reasons for which the increases were made are evidence of the reasonableness of the Assessor's judgment. Even if the Assessor made a mistake in judgment, this would not make his decision unauthorized by law, but merely a mistake or improper exercise of his authority. See *People ex. rel. Williams v. McDonald* (1970), 44 Ill. 2d 349, 352, 255 N.E.2d 400; *Bowman v. County of Lake* (1963), 29 Ill. 2d 268, 276, 193 N.E.2d 833.

■■ The final ground on which the trial court considered the increased assessments unauthorized by law was the defendants' failure to introduce evidence establishing that the Assessor appended affidavits to the assessment books after the revisions were made as required by law (section 97 of the Act). The failure to attach the affidavit was raised by the trial court during the plaintiff's case. During the trial, the court inquired of counsel for plaintiff if affidavits had been attached to the assessment books for the 1971 assessment. Plaintiff's counsel responded that he did not know if such affidavits were attached. Neither defendants nor plaintiff raised this issue during the trial. So far as we can determine from the record, and we have not been referred to the record by counsel, the matter was not mentioned again until the trial court included it in his memorandum opinion and ruling as a ground for finding the 1971 assessments invalid. As noted by defendants, an assessment is presumed valid. *(People ex rel. Kramer v. Chicago, Burlington & Quincy R.R. Co.* (1956), 8 Ill. 2d 382, 387, 134 N.E.2d 335; *People ex rel. Toman v. Olympia*

*Fields Country Club* (1940), 374 Ill. 101, 104, 28 N.E.2d 109.) Although this presumptive validity has generally been applied to the amount of the assessment, we can find no authority to exclude from this presumption the principle that the ministerial procedures pertaining to that assessment were proper.

■■ It is to be remembered that plaintiff made no reference to this point in the complaint, presented no evidence on this point in its case in chief, and, so far as we can determine, made no point of this question in its argument to the court. So far as we can tell from the record before us, there is nothing in the record to establish whether or not the affidavit of the Assessor was appended to the assessment books. The plaintiff has the burden of going forward with the evidence to overcome the presumptive validity of the assessment. (*Cf. People ex rel. Kramer v. Chicago, Burlington & Quincy R.R. Co.*, 8 Ill. 2d 382, 387.) Even assuming affidavits were not appended to the assessment books, such a failure would not affect the justice of the assessment. *Cf. People ex rel. Penrod v. Chicago & North Western Ry. Co.* (1959), 17 Ill. 2d 307, 309, 161 N.E.2d 126; *People v. Kimmel* (1926), 323 Ill. 261, 265, 154 N.E. 97.

Thus we hold the 1971 assessments were not unauthorized by law. The Assessor had the statutory authority to increase the assessments in a nonquadrennial year provided he followed the statutorily prescribed requirements of notice and hearing. In our opinion there is nothing in this record on this point to permit plaintiff to seek equitable relief.

## B.

Next we consider whether equitable jurisdiction arises from the allegation that the revised assessments were constructively fraudulent. As argued by plaintiff, constructive fraud had been sufficient grounds for indirect review of real property assessments when the courts had no power in the absence of illegality or fraud to review these assessments. (See Young, *Taxpayers' Remedies*, 1952 U. Ill. L. F. 248.) Once judicial remedies were established for the review of property assessments, the supreme court held that only in certain situations could equitable relief be sought. *Lackey v. Pulaski Drainage Dist.* (1954), 4 Ill. 2d 72, 74, 122 N.E.2d 257, stated:

> "[T]he fundamental rule that equity will not assume jurisdiction unless special grounds for equitable jurisdiction are established, and unless the plaintiff does not have an adequate remedy at law, is subject to two exceptions; namely, where a tax is unauthorized by law or is levied upon exempt property."

In *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 107, 306 N.E.2d 299, the supreme court recently cited the above rule and added:

> "This rule requires that, other than in cases involving the two

exceptions, a special ground for equitable jurisdiction, such as fraudulently excessive assessment, must exist *and* that an adequate remedy at law must not be available."

*La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 323, 312 N.E.2d 252, firmly repeated this principle stating:

"In cases of fraudulent assessments we held that equity will grant relief only if an adequate remedy at law is not available."

Plaintiff contends the trial court properly determined that this case was one of those referred to in the *Clarendon* decision — a case of fraudulently excessive assessments where the remedy at law will not be adequate and injunctive relief should be available. (56 Ill. 2d 101, 108.) Plaintiff distinguishes *Clarendon* and *La Salle* from the case at bar, noting that both of those cases concerned preliminary injunctions whereas this case involves a permanent injunction, and in both those cases the amount of the contested tax, though not paid, had been set aside by the plaintiff-taxpayer in a separate fund awaiting the outcome of the litigation. However, here defendants had no obligation to appeal the allowance of the preliminary injunction. Of course, the granting of the preliminary injunction is not determinative of the case on its merits. (See *House of Vision, Inc. v. Hiyane* (1st Dist. 1965), 58 Ill. App. 2d 431, 439, 208 N.E.2d 390; 21 Ill. L. & Pr. *Injunctions* §132 (1956).) Plaintiff did not set aside the amount of the contested tax. If failure to pay the tax or set it aside in a separate fund was sufficient, a taxpayer would then only have to allege constructive fraud to be given the right to proceed in equity.

Plaintiff contends the remedy at law is inadequate, referring to the trial court's order allowing plaintiff's motion for a preliminary injunction, and in which it held that the plaintiff's remedies at law were inadequate. The reasons noted for finding the remedy at law inadequate were the substantial amount in controversy, the failure of the statutory remedy to provide for interest if the taxpayer should prevail, and merit in the contention the plaintiff was financially unable to pay the tax.

■■ The failure to pay interest was specifically held not to constitute grounds for holding the remedy at law inadequate in *Clarendon* (56 Ill. 2d 101, 109):

"If a failure to provide for the payment of interest on a tax refund were to render the statutory remedy inadequate, then the remedy would be inadequate as to all objections to taxes whether these objections were based on constructively fraudulent assessments, excessive rate, appropriation for multiple purposes or any other of the many grounds for filing objections to taxes."

The trial court noted that the substantial amount in controversy supported "the contention of the taxpayer that it is financially unable to pay the higher amount at this time." Plaintiff suggests that the pleadings and

evidence at the trial supports the allegation that it was unable to pay the tax caused by the increased assessment. Neither the amended complaint or the motion for a preliminary injunction makes such an allegation. Our review of the record fails to disclose any evidence of plaintiff's inability to pay. Plaintiff suggests evidence was presented to the Assessor which established an increase in the cost of operating and maintaining the properties between the years 1970 and 1971 with little or no increase in profits. But that fails to establish that a company owning properties of the type and value involved here is not able to pay the real estate tax applicable to the increased assessment. As in *Exchange National Bank v. Cullerton* (1st Dist. 1974), 17 Ill. App. 3d 392, 395, 308 N.E.2d 284, there is not enough evidence to support the conclusion plaintiff was entitled to injunctive relief because of its inability to pay the tax.

Plaintiff cites *Hoyne Savings & Loan Association v. Hare* (1974), 60 Ill. 2d 84, 322 N.E.2d 833, in support of the proposition that the increase in the assessments was so great as to hold the remedies at law inadequate. In *Hoyne,* the taxpayer's property (50 acres of vacant land) was assessed at a value of $9,510 for the year 1970. In the quadrennial year 1971 the assessment on these properties was increased to $246,810 — an increase of $237,300 or an increase of 2,500%. In affirming the trial court's injunctive relief for the 1971 tax, the supreme court noted that the Assessor failed to give notice of the increased assessment until after the county board of review had closed its books for the 1971 taxes. Additionally, the supreme court noted the assessment was based on a use of property not permitted by the existing zoning ordinance, on the improper assumption that the lots were improved with water and sewer services, and that the board voluntarily reduced the assessment to $55,000 for the year 1973. These facts constituted unusual circumstances which, coupled with the admitted fact that the assessment for 1971 was grossly excessive, justified equitable relief for 1971. The same facts, except the failure of the Assessor to notify the taxpayer of the increase prior to the time the board of review closed its books, were argued to sustain the trial court's allowance of an injunction with respect to the 1972 taxes based on the same assessment as that for 1971. Our supreme court noted that in 1972 plaintiff, with knowledge of the excessive assessment, did not pursue its statutory remedy, and in reversing the 1972 assessment stated:

> "There is nothing here concerning the 1972 taxes which distinguishes this case from *Clarendon,* and we feel that equitable relief as to the 1972 taxes is not warranted." 60 Ill. 2d 84, 91.

In the case at bar plaintiff's assessments were increased about 37%. Plaintiff stipulated it was given sufficient notice and a hearing by the Assessor on the proposed increases and challenged them before the board

of review. As noted in this opinion, we find nothing in the record to sustain equitable jurisdiction to review the 1971 assessment increases. *Clarendon; La Salle; Hoyne;* see 24 DePaul L. Rev. 465 (1975); *cf. North Pier Terminal Co. v. Tully* (1976), 62 Ill. 2d 540, 343 N.E.2d 507, *rehearing denied,* March 25, 1976; *People ex rel. Korzen v. Fulton Market Cold Storage Co.* (1976), 62 Ill. 2d 443, 343 N.E.2d 450, *rehearing denied,* March 25, 1976.

## II.

■■ In view of our resolution of the first issue, it is not necessary to review the finding that the assessments were constructively fraudulent because, even if they were, the taxpayer nevertheless had an adequate remedy at law.

The judgment of the circuit court of Cook County is reversed and remanded with directions to dismiss the cause for lack of jurisdiction.

Reversed and remanded.

STAMOS, P. J., and HAYES, J., concur.


## SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff filed a petition for rehearing which, in addition to re-arguing points considered by the court in its original opinion, urged this court to consider the case of *Illinois Bell Telephone v. Allphin* (1975), 60 Ill. 2d 350, 326 N.E.2d 737. It is suggested that we should follow *Allphin* and apply the "fundamental fairness" doctrine which we noted—by way of a footnote—in *Head-On Collision Line, Inc. v. Kirk* (1st Dist. 1976), 36 Ill. App. 3d 263, 267, 343 N.E.2d 534; and our decision in *Saxon-Western Corp. v. Mahin* (1st Dist. 1976), 39 Ill. App. 3d 100, 349 N.E.2d 591. In summary plaintiff suggests it is grossly inequitable and unfair in resolving this appeal to apply the decision of *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 306 N.E.2d 299, as that case was not decided until after the trial court had ruled on the instant case.

## I.

At the outset it is to be noted that the *Allphin* opinion was filed by our supreme court on March 24, 1975. Plaintiff filed its brief in this court on June 17, 1975. Oral argument was held on December 2, 1975. At no time prior to the petition for rehearing did plaintiff note or suggest the applicability of *Allphin*. Parties cannot in a petition for rehearing raise

points or arguments which could have been raised on or before oral argument of the appeal. See *Arkley v. Niblack* (1916), 272 Ill. 356, 363, 112 N.E. 67; *Sobina v. Busby* (1st Dist. 1965), 62 Ill. App. 2d 1, 25, 26, 210 N.E.2d 769.

Notwithstanding the procedural deficiency, we prefer to analyze the merits of plaintiff's argument. *Allphin* involved a declaratory judgment action by the telephone company concerning whether certain of its revenues were exempt from the Messages Tax Act. (Ill. Rev. Stat. 1971, ch. 120, par. 467.1 *et seq.*) A question arose as to whether the telephone company should have exhausted its remedies under the Administrative Review Act[1]—a 20-day protest period—rather than seek declaratory and equitable relief. Concluding that the telephone company, in seeking relief by court action instead, had relied on *Owens-Illinois Glass Co. v. McKibbin* (1943), 385 Ill. 245, 52 N.E.2d 177, which preceded the 1945 adoption of the Administrative Review Act and its opinion in *Calderwood Corp. v. Mahin* (1974), 57 Ill. 2d 216, 311 N.E.2d 691, the supreme court held that fundamental fairness dictated that the telephone company was entitled to have the case decided on the basis of *Owens*.

In *Allphin, Owens, Calderwood, Head-on Collision,* and *Saxon-Western*, the courts were dealing with either a message tax, retailer's occupation tax, or a private car line tax, together with the question of whether the taxpayer should exhaust its administrative remedy from a final ruling by the Department of Revenue or proceed directly to court.

On the other hand, as set forth in our opinion, the instant case involves a challenge to the 1971 real estate assessment and the *statutory* procedure for protesting such an assessment. Likewise, the following cases cited in our opinion as the authority for our conclusion deal with the propriety of real estate assessments: *Clarendon; La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 312 N.E.2d 252; *Hoyne Savings & Loan Association v. Hare* (1974), 60 Ill. 2d 84, 322 N.E.2d 833; *North Pier Terminal Co. v. Tully* (1976), 62 Ill. 2d 540, 343 N.E.2d 507.

We think there is a difference between the issue of the availability of equitable relief where a plaintiff seeks such relief from an adverse final tax determination of an administrative agency without complying with the condition precedent of exhausting his internal administrative remedies before resorting to the statutory legal remedy of judicial administrative review provided by the Administrative Review Act in administrative agency proceedings to which that Act is applicable (as illustrated by *Allphin*), and the issue of the availability of equitable relief where a plaintiff seeks such relief from an adverse final tax or assessment determination by an executive agency despite the fact that a statute

---

[1] Ill. Rev. Stat. 1969, ch. 110, par. 264 *et seq.*

provides a legal remedy for protesting the said determination (as illustrated by *Clarendon*). It is to be noted that plaintiff here has cited no cases of the latter type in which its theory of "fundamental fairness" has been applied. On the contrary, it was the very fact that the majority in *Clarendon* refused to apply that theory which compelled the minority to dissent (a refusal in which our supreme court thereafter persisted in both *La Salle* and *Hoyne*). In *Clarendon*, the taxpayer, relying on earlier supreme court decisions, proceeded to seek injunctive relief. The supreme court unanimously held that the taxpayer should have pursued its statutory relief under sections 194 and 235 of the Revenue Act of 1939; however, two justices held it was unfair to penalize the taxpayer for proceeding as it did, relying on prior language of the supreme court. But neither in *Clarendon* nor in any of the cases cited above which have followed it, has the supreme court indicated any relief for those who fail to follow the long existing statutory basis for protesting real property assessments.

Plaintiff points out that *Clarendon* was not decided until October 1, 1973, whereas it filed its complaint on April 3, 1972 and the decree and judgment appealed from was entered on March 2, 1973. As it is noted above, the taxpayers in *Clarendon* were faced with the same problem, as were the taxpayers in *La Salle* and *Hoyne* in which the trial court rendered its judgment prior to the pronouncement of *Clarendon*.

As stated in our original opinion, plaintiff failed to carry out the trial court's order to pay the first installment of the property taxes due June 1, 1972. The "predicament" that it now complains of was in fact brought about by the course of action elected by the plaintiff.

Plaintiff also suggests it "finds it impossible to reconcile the instant decision" with our decision in *Stevens v. Protectoseal Co.* (1st Dist. 1975), 27 Ill. App. 3d 724, 327 N.E.2d 427. In *Stevens* we pointed out that the 1970 Illinois Constitution abolished the distinction between the courts of law and equity so that our State's circuit courts have original jurisdiction of all justiciable matters. *Stevens* involved an employment agreement dispute between employee and employer. No question was involved concerning failure of one party to follow well-established statutory procedures to seek relief as involved in the instant case. There is no deviation from our holding in *Stevens*; in fact the language of that case is equally applicable to the instant case.

We adhere to our original opinion that plaintiff had an adequate remedy at law.

II.

Plaintiff asserts that the cause should be remanded to the trial court to consider Counts II and III of the amended complaint. In Count II

plaintiff alleged a lack of uniformity in the assessments of its property with respect to other property of a comparative nature and use in the County, and that its property received a higher assessed valuation than other classes of property, *e.g.*, certain residential properties. In Count III the plaintiff alleged that the board of appeals erroneously approved the assessments. The trial court did not rule on either of these two counts.

All of these contentions in Counts II and III could have been raised by the plaintiff if it had pursued the statutory procedure for challenging assessments. In view of our holding that equitable relief was not appropriate, it would be improper to remand the cause to the trial court. Plaintiff having failed to follow the procedure set forth in sections 194 and 235 of the Revenue Act of 1939,[2] there is no basis upon which the circuit court of Cook County—either in law or equity—at this time could timely consider the allegations in Counts II and III. Therefore a remand would be inappropriate.

### III.

Keeping in mind that by holding equitable relief was inappropriate and statutory relief the proper remedy, it is not necessary in this opinion to respond to each of plaintiff's contentions which allege certain technical errors in the 1971 assessments. We have reviewed each of the other points raised by plaintiff in its petition for rehearing and find that these merely re-argue points already decided or under our holding are not appropriate.

For these reasons we adhere to our original opinion and deny the petition for rehearing.

Petition for rehearing denied.

STAMOS, P. J., and HAYES, J., concur.

---

[2] Ill. Rev. Stat. 1969, ch. 120, pars. 675, 716.