*In re* GUARDIANSHIP OF JOHN CHARLES ZARSE, JR., Deceased (John Charles Zarse, Sr., Guardian, Petitioner-Appellee, v. The Department of Mental Health & Developmental Disabilities, Claimant-Appellant).

Fourth District   No. 4—87—0925

Opinion filed September 28, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of Chicago, of counsel), for appellant.

Mary E. Perlstein, of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

The Education for All Handicapped Children Act of 1975 (EAHCA) (20 U.S.C. §1400 et seq. (1976); see also 20 U.S.C. §1400 et seq. (1982 & Supp. IV 1986)) provides for the Federal government to distribute funds to States to assist in paying costs of educating handicapped children but requires recipient States to adopt policies to provide those services free of charge. At times pertinent, acting pursuant to the Mental Health and Developmental Disabilities Code (Code) (Ill.

Rev. Stat. 1983, ch. 91½, par. 1—100 *et seq.*), the Illinois Department of Mental Health and Developmental Disabilities (Department) has received these funds and used them together with other funds to provide for the education of mentally handicapped children.

■ At times pertinent, sections 5—105 through 5—116 of the Code (Ill. Rev. Stat. 1983, ch. 91½, pars. 5—105 through 5—116) placed a requirement upon responsible relatives and the estate of recipients of a wide variety of services including those for handicapped children to reimburse, according to their ability, the Department for the rendition of those services. The principal issue in this case is whether the provisions of EAHCA preempt the provisions of sections 5—105 through 5—116 of the Code, preventing the Department from seeking recovery against the guardianship estate of a deceased minor who had received such services under the circumstances here. In this case, the estate of the minor contained large sums of money obtained pursuant to a medical malpractice settlement with a practitioner alleged to have negligently caused the condition which handicapped the minor child. We hold that such preemption did occur, thus preventing recovery.

A secondary issue is whether the guardianship estate of the deceased minor, because of failure to exercise administrative remedies or otherwise, is prevented from disputing the Department's claim. We hold the estate is not prevented from disputing the claim.

The record in this case reveals the following. The minor John Charles Zarse, Jr., was born mentally retarded on April 10, 1971, and died June 17, 1983. He had resided mainly in facilities operated by the Department from March 15, 1976, until his death. Prior to the minor's death, his father, John Charles Zarse, Sr., had been appointed guardian of his estate by the circuit court of Vermilion County. On October 21, 1983, four months after the minor's death, the Department sent a "Notice of Determination of sums due" to the guardian pursuant to section 5—111 of the Code (Ill. Rev. Stat. 1983, ch. 91½, par. 5—111) claiming the sum of $48,725 was due the Department and thus initiating proceedings under the Code for reimbursement. Section 5—111 states that a party wishing to dispute such a determination of amount due can do so by filing with the Department, within 90 days of the notice, a petition for review by the Board of Reimbursement Appeals (Ill. Rev. Stat. 1983, ch. 91½, par. 5—111). The guardian attempted no such action until after the 90-day period had expired.

Section 5—113 of the Code permits suits against responsible relatives of recipients "liable under [the] Act" for reimbursement to be

brought in the circuit court of the county where they reside. (Ill. Rev. Stat. 1983, ch. 91½, par. 5—113.) Section 5—114 of the Code permits the filing of a claim in the estate of a decedent for reimbursement owed by the decedent. (Ill. Rev. Stat. 1983, ch. 91½, par. 5—114.) On December 15, 1983, less than 90 days after the Department's issuance of the notice of determination, the Department filed a claim in the minor's guardianship estate seeking reimbursement for services rendered to the minor in the sum of $50,823.02. On February 15, 1984, the guardian filed a motion objecting to and seeking to dismiss the claim and a counterclaim for reimbursement. The motion and objections raised various procedural points and also contended the provisions of EAHCA prevented the Department from obtaining reimbursement. The counterclaim was later withdrawn. After a hearing on the motion and objections, the court entered an order determining that the provisions of EAHCA prevented recovery by the Department. The claim was dismissed. The Department has appealed. We affirm.

Congress enacted EAHCA pursuant to its power to enforce the fourteenth amendment. (*Parks v. Pavkovic* (N.D. Ill. 1982), 536 F. Supp. 296, 307.) Section 1412 of EAHCA states:

"In order to *qualify for assistance* under this subchapter in any fiscal year, a State *shall* demonstrate to the Commissioner that the following *conditions* are met:

(1) The State has in effect a policy that assures all handicapped children the right to a *free* appropriate public education." (Emphasis added.) (20 U.S.C. §1412 (1976).)

A Federal regulation promulgated pursuant to this Act also states:

"The purpose of this part is:

(a) To insure that all handicapped children have available to them a free appropriate public education which includes special education and related services to meet their unique needs,

(b) To insure that the rights of handicapped children and their parents are protected,

(c) To assist States and localities to provide for the education of all handicapped children, and

(d) To assess and insure the effectiveness of efforts to educate those children." 34 C.F.R. §300.1 (1987).

Section 1401(18) of EAHCA defines the term "free appropriate public education" as follows:

"[S]pecial education and related services which (A) have been provided at public expense, under public supervision and direction, and *without charge* ***." (Emphasis added.) (20 U.S.C.

§1401(18) (1976).)

As one Federal regulation indicates, this right to a free education as above-defined can include the right to receive *other* services at no charge in some instances. For example:

"If placement in a public or private residential program is necessary to provide special education and related services to a handicapped child, *the program, including non-medical care and room and board, must be at no cost to the parents of the child.*" (Emphasis added.) 34 C.F.R. §300.302 (1987).

It is apparently undisputed John Charles Zarse, Jr., had to be placed in such a program in order to receive special education.

The Department does not dispute that the State of Illinois has agreed to participate in the EAHCA program and has received funding from the Federal government under the program. In *Parks v. Department of Mental Health & Developmental Disabilities* (1982), 110 Ill. App. 3d 184, 441 N.E.2d 1209, parents of a handicapped child sought administrative review in the circuit court of a Department decision, as here, assessing them for the expenses of the Department in rendering educational service to that child. Ultimately, the Appellate Court for the First District held that the provision of EAHCA, requiring recipient States to provide those services free of charge, preempted the provisions of the Act purporting to authorize the Department to obtain reimbursement from responsible relatives of the child for the services. Accordingly, the appellate court affirmed the circuit court's decision to set aside the award.

The Department does not dispute that here EAHCA preempted any State right to obtain reimbursement from responsible relatives of the minor or the minor himself. Rather, the Department maintains it can obtain reimbursement here from the fund held by the guardian resulting from the settlement of claims for medical malpractice which allegedly caused the condition requiring the minor to need the educational services furnished by the Department. The settlement approved by the court in the guardianship proceedings provided for certain sums to be paid to the guardian to be used "for *past*, present and future medical, hospital or institutional care for [the minor], as well as for all other costs and expenses incurred in connection with his support." (Emphasis added.) The settlement provided for payments to continue for 20 years regardless of whether the minor died sooner. (The minor did die less than one year after settlement.) Under the settlement, the minor's parents also received a lump sum. The total package required payments of over $1,200,000. The guardianship held funds fully ample to pay the Department's claim after payment of all

other of the minor's expenses.

The Department maintains the guardianship funds are accessible for reimbursement to the Department because of an additional Federal regulation enacted pursuant to EAHCA which provides that "[e]ach State may use whatever State, local, Federal, and *private sources* of support are available in the State to meet the requirements of this part" and goes on to state "[n]othing in this part relieves an insurer or similar third party from an otherwise valid obligation to provide or to pay for services provided to a handicapped child." (Emphasis added.) 34 C.F.R. §300.301 (1987).

In *Seals v. Loftis* (E.D. Tenn. 1985), 614 F. Supp. 302, parents of a handicapped child in the care of a Tennessee public school were advised by school authorities to seek psychological and neurological evaluations of the child. This was done, and a dispute arose as to any responsibility of the parents in regard to payment for those evaluations. The parents brought suit under section 1415 of the United States Code (20 U.S.C. §1415(e)(2) (1976)), partially requesting reimbursement to them by the school unit for insurance proceeds paid to that unit by insurance policies owned by plaintiffs. The court held the parents were entitled to $99.70 as a result of payments made on one of their policies, because the maximum lifetime benefit available under that policy had been reduced by that much. The court also held that the parents were entitled to no reimbursement for payments made under the other policy because the value of that policy had not been diminished. The thrust of the opinion was that parents were entitled to seek reimbursement from a State unit furnishing EAHCA services which were actually paid for by their insurer only to the extent those payments were detrimental to the value of the policies to the parents.

Here, the guardianship funds had been paid to the guardian in exchange for a release of liability under the malpractice claim and, as the settlement agreement indicated, the expense of educating the handicapped child was a very substantial element of the damages involved. Accordingly, requiring some of those funds to be used to reimburse the Department appears to be fair. However, neither the holding in *Seals* nor any provision of the previously mentioned Federal regulation (34 C.F.R. §300.301 (1987)) authorizes us to make such a decision.

■ The phrase "private sources of support" (34 C.F.R. §300.301 (1987)) appears to have reference to contributions. Section 22 of "An Act codifying the powers and duties of the Department of Mental Health and Developmental Disabilities" (Ill. Rev. Stat. 1987, ch. 91½, par. 100—22) authorizes the Department to receive such contributions

and the contributions can be spent for education of handicapped children. Such funds would constitute a "private [source] of support." If "private sources of support" included any funds in the guardianship estate of a handicapped minor then the requirement that the education be free to the minor would be breached.

■ The Department's contention that it is permitted to obtain reimbursement because of the provision that "[n]othing in this part relieves an insurer or *similar third party* from an otherwise valid obligation to provide or to pay for services provided to a handicapped child" is more complicated. (Emphasis added.) (34 C.F.R. §300.301 (1987).) In *Seals*, the parents' insurer had a contractual obligation to pay for services rendered to the parents' handicapped child. A "similar third party" might be a health maintenance organization or an employer under some noninsured employee benefit plan. In these cases, the third party is under a direct contractual duty to provide the services or to pay the provider. A tortfeasor is not a "similar third party," because it has no obligation to make payment to the provider of resources but only to reimburse the injured party for expenses incurred as a proximate result of the tort.

Notably, *Seals*, unlike *Parks v. Department of Mental Health & Developmental Disabilities* (1982), 110 Ill. App. 3d 184, 441 N.E.2d 1209, was an action brought by a parent against a governmental agency that had furnished services to a handicapped child seeking reimbursement because the governmental agencies had been reimbursed from an insurance policy upon which the parents had furnished the premiums directly or indirectly. Nothing was sought from the parents, the minors, or the estate of either of them. Here, as in *Parks*, reimbursement is being sought from parents or *the estate of the handicapped child*. No precedent is cited by the Department for the allowance of such a claim.

The trial court properly ruled that neither *Seals* nor the Federal regulation applicable overcame the preemptive effect of EAHCA from preventing the Department from obtaining reimbursement from the minor's guardianship account.

■ The failure of the guardian to follow administrative procedure available to him did not estop or otherwise prevent him from defending the claim filed by the Department in the guardianship proceedings. As we have indicated, the guardian filed no timely petition for review from the Department's determination of the amount due for reimbursement. (Ill. Rev. Stat. 1983, ch. 91½, par. 5—111.) The guardian also failed to take administrative review to the circuit court of the administrative decision determining his attempt to attack the

determination was untimely. (Ill. Rev. Stat. 1983, ch. 91½, par. 6—101.) The Department maintains the guardian has thus waived any defense to the Department's determination (*Calderwood Corp. v. Mahin* (1974), 57 Ill. 2d 216, 311 N.E.2d 691), and the only function left for the circuit court was to approve the Department's claim in the guardianship proceedings. The guardian responds that he was not required to follow the prescribed administrative route because (1) to do so would have been futile because the Department had already indicated its position that its claim was viable, or (2) the guardian was questioning the constitutionality of the Illinois statutory scheme for reimbursements to the Department. *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223; *Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 359 N.E.2d 113.

We need not examine in detail the complicated question of when a party is required to exhaust administrative remedies in order to seek relief in the circuit court. Here, the initial action by the Department was to issue its determination of amount due on October 21, 1983. The guardian had 90 days to respond to that determination (Ill. Rev. Stat. 1983, ch. 91½, par. 5—111), but on December 15, 1983, less than 90 days from issuance of the determination, the Department filed a claim in the guardianship proceedings. Thus, the Department, rather than the guardian, chose the forum for decision as to whether reimbursement could be obtained and did so more than one month before the time for the guardian to dispute the determination had expired. The guardian was not required to simultaneously defend in the administrative proceedings and in the circuit court of Vermilion County. The action of the Department waives any possible waiver by the guardian.

We affirm the decision of the circuit court denying the claim for reimbursement brought in the guardianship proceedings.

Affirmed.

LUND and KNECHT, JJ., concur.